WILLIAM MIKE MORAN, Appellee, v. IOWA STATE HIGHWAY COMMISSION, Appellant.

No. 43754.

JUNE 15, 1937.

REHEARING DENIED OCTOBER 1, 1937.

Henry N. Graven and George J. Dugan, for appellant.

John Connolly, Jr., Irvin Schlesinger, and George E. O'Malley, for appellee.

SAGER, J.—Appellee, at the time the proceeding with which we are dealing was commenced, was the owner of a quarter section of land in section 28, township 81, range 26, in Dallas county. Across this farm an interurban railroad had taken a strip 100 feet wide, running from approximately the southeast corner to the northwest corner, leaving about 75 acres to the north and 75 acres to the south of said strip. Appellant, for its purposes and in this proceeding, condemned a strip of land along the north side of the interurban right of way, which from the northwest corner of the farm to the tract in the southeast corner upon which the buildings were situated was 115 feet wide, and from thence on 100 feet wide. All the buildings were situated in the southeast corner and included a six-room dwelling, with other buildings and sheds which need not be described. There was no accommodation for the housing of more than eight horses, or for storage of grain, hay, or machinery. The witnesses generally testified that the farm was all tillable but that it had been used principally as a stock farm.

In the construction of the highway across the condemned strip appellant built a culvert and cattle pass, and grade crossings across the interurban right of way in such manner as that, when the road was completed appellee's means of reaching that part of his farm which lay south of the right of way, and the passage of his stock from the north to the south side of the right of way, remained substantially as before the new highway was laid out.

The proceedings resulted in taking away from the area of appellee's farm 8.12 acres. This reduced that part of the southeast corner of his farm which was about and adjacent to his buildings and which had served as a feed lot, by about one acre. It is claimed by appellee that the new highway, in addition to reducing the area of his feed lot, made it impossible for him to stack straw thereon as he had theretofore done, and also made it difficult to pass from the feed lot to his fields past a row of trees which stood north and west of his buildings.

The condemnation proceedings cut off from the appellee's farm a well, which, after the new highway was built, was near the traveled portion of the highway and located in the top of

the crown of the road near the north shoulder about 50 feet from the north line of the tract which had been taken for highway purposes. In the building of the highway the well was bricked up to two feet of the top of the grade. In the construction of the highway efforts were made by the representatives of the appellant to provide for the continued use of the well by the appellee. This will have further attention as we proceed.

While the record discloses other features around and about the premises, what has been said will give a general idea of the situation and permit an understanding of the questions involved. In what follows no criticism is intended of the representatives of the highway commission; in fact, it appears that a painstaking effort was made to avoid unnecessary injury to the appellee; and if, in the final result, he has not that protection it was sought to give him it is because of certain rules of law which appear not to have entered into the calculations of those who initiated these proceedings. From the beginning and throughout, no reservations of any kind were made, in the notices or elsewhere, by which there was saved to the appellee any of the rights to the property taken from him which are now urged in mitigation of the damages claimed by him.

While we dispose of the various complaints urged by appellant it will not be done in detail.

 Actually the case turns upon two propositions. The first of these is that: ''The court erred in not permitting the defendant to show the manner in which the right of way had been finally constructed through the plaintiff's farm, * * * .'' This complaint is elaborated to point out specifically the efforts made to preserve the well, and the conditions appearing generally after the completion of the road. Appellant urges that the offer made by appellant to conduct the water from the well to appellee's premises, the building of culverts and drains, and other features about the completed highway, should have been considered in mitigation of the damages allowed by the jury.

We have examined appellant's citations from our own decisions, and a part of those from other jurisdictions, and fail to find therein support for the claims urged. Appellant says that in determining the amount of damages, all pertinent facts in reference to the condition of the farm after the construction of the road are admissible. This contention is sound if correctly

understood, but the decisions do not warrant its application here.

An examination of the authorities cited will point out the distinction. Thus, Kosters v. Sioux County, 195 Iowa 214, at p. 218, 191 N. W. 993, 995, merely holds that it was proper for the jury to take into consideration "all pertinent facts pertaining to the condition of the farm before and after the construction of the road." It is to be noticed that it is the condition of the farm, and not the condition of the highway, that is to be considered.

To the same effect is Kukkuk v. City of Des Moines, 193 Iowa 444, 187 N. W. 209.

While we have not examined all the cases cited from other jurisdictions, we have gone sufficiently far to find that they have no bearing upon the question before us; and no detailed analysis of them will be attempted.

On this feature of the case appellant argues that the state took only an easement, and that to all intents and purposes appellee's right to the well taken from him remains substantially as it was before because of the arrangements made to pipe the water to his land.

The authorities cited do not sustain this contention. City of Dubuque v. Maloney, 9 Iowa 450, 74 Am. Dec. 358, holds that the laying off of lands by the general government for street purposes, and leaving the title to the soil under the surface to adjacent lot owners, permitted the property owner to excavate for cellar and foundation wall under a building, and would not make him liable for the destruction of a cistern wrongfully built by the city in the subsurface which belonged to the lot owner.

The case of Hollingsworth v. Des Moines & St. Louis Ry. Co., 63 Iowa 443, 19 N. W. 325, next cited, merely holds that the appropriation by a railway of the surface of the lands leaves so little of value to any reversionary right that the measure of damages, in a case where an entire lot was taken, is the full market value of the lot.

In City of Dubuque v. Benson, 23 Iowa 248, there appears to have been in the original dedication of the streets from the subsurface of which the defendant was removing lead ore an express reservation that "the streets and alleys were dedicated for street purposes and those only."

Draker v. Iowa Electric Co., 191 Iowa 1376, 182 N. W. 896,

the last of the Iowa cases cited by appellant, will be found to have reference to condemnation for an easement to carry electric current across the landowner's property, under statutory provisions which are wholly different than those applicable to the situation before us.

Appellant urgently contends that its efforts to mitigate the damages sustained by appellee in its construction of culvert and cattle pass, and the laying of water pipes from the well, should have had the effect of materially reducing the amount of appellee's award, and hence the error of the court in not permitting a showing thereof to be considered to that end. The difficulty with this contention is that, admitting the present good intentions of the highway authorities, the appellee has nothing left in what was taken from him except the good will of those to whom in the future will be committed the maintenance of our state highways.

What one holds by the grace or favor of another he holds by a tenure too uncertain to give it any value whatever. Had there been any reservation made through these proceedings by which any advantages which appellee may now have, through the favor of the highway authorities, could be claimed and enforced as a matter of right, a different situation would be presented.

Appellant complains that the court erred in refusing to permit valuation experts to testify whether or not they were familiar with sales of similar properties in the community, and to permit one witness to testify on redirect prices at which similar properties had been sold. The trial court might well have permitted the witnesses to answer, but since they had given their testimony as to values generally, after qualifying, we do not feel that the error, if any, was sufficient to warrant a reversal.

Neither is the complaint of appellant that the court erred in refusing to permit it to show by appellee on cross-examination whether his land on the north side of the right of way was fenced or would require fencing. The description of the situation given by the various witnesses, and the plat offered in evidence, which was admitted by both sides to be correct, could leave no doubt in the minds of a jury of average intelligence what the situation was on this subject.

Again, appellant complains that the court erred in not permitting appellant to show the distance of the farm in question from the various market centers, and the character of the roads.

We are at a loss to understand how this could be seriously urged. As has been pointed out, the condition of the new road, in our opinion, can have no weight in the determination of the damages sustained by appellee, and certainly the condition of the old road and the location of the farm with reference to market centers could not be altered by these condemnation proceedings.

■■■ Appellant complains that the court erred in permitting appellee to bring out on cross-examination of one of appellant's experts on value, who was also a member of the condemnation commission, whether the assessment made by him as condemnation commissioner correctly expressed his judgment as to the amount of damages sustained by appellee. While we see no reason for permitting this line of cross-examination, neither do we see any reason for complaint against it. In the absence of a showing to that end, it must be assumed that the assessment made by a sworn commissioner would be in accordance with his actual and good faith judgment.

We do not overlook Winklemans v. Des Moines Northwestern Ry. Co., 62 Iowa 11, at page 18, 17 N. W. 82, wherein we sustained the trial court in refusing to allow testimony of commissioners to the effect that their report and assessment made to the sheriff correctly expressed their judgment. Nothing was said as to what weight would have been given to the erroneous ruling had the court in that case permitted an answer.

■■■ Appellant complains that the court erred in permitting appellee's valuation witnesses to testify as to the value of the farm immediately after the condemnation without requiring the question to be put to them in such a manner that the jury would understand *they were not taking into consideration any benefits to the farm by reason of the new road.* Authorities are cited to sustain the contention that damages are to be assessed without taking into account any benefits that might accrue to the property owner by reason of the improvement. Citations to this effect are unnecessary because of the provisions of sec. 18, Art. I, of our Constitution. We do not understand why this objection comes from the appellant. If the jury, overlooking this rule, should have taken into account any benefits to the value of what was left to the appellee after the condemnation, it would appear to reduce rather than enhance the amount of the finding of the jury. This provision is one which is usually urged by the land-

owner. Moreover, the court in instruction No. 6, in the plainest terms, gave the jury the correct rule as to measure of damages.

This brings us to the last and most difficult question in the case, to wit: Is the verdict of the jury excessive and should it have been set aside? The record in this case presents the usual range of estimates of value, from those which are surprisingly low to those which seem too high. The verdict arrived at is indeed high, and we would have been as well satisfied had the amount awarded to the appellee been smaller; but we do not feel warranted in substituting our judgment for that of the jury and the trial court who heard and saw the witnesses and doubtless had a picture of the situation that it is not possible to convey to us by the printed record. Had we been able to agree with appellant's contention that the efforts made by its agents and representatives to minimize the damages which appellee would sustain should be taken into account in fixing the sum of his loss, we would feel some justification for reversing because of excessive award. But, since, as has been pointed out, we hold that that which may be had only as a favor and by the grace and tolerance of another, without any basis or foundation upon which the landowner could appeal to the courts to preserve such favors, the damages must be estimated without taking these into consideration. When in this light we consider the loss of the well, which served not only the appellee but the neighbors as well for the purpose of watering stock through dry seasons and wet, the shrinking of the feed yards and elimination of space in which to stack straw in the yards, the possibility that the necessities of the public may require changes in the highway which will eliminate crossings, culvert, and cattle pass, it is difficult to make an accurate estimate of the damages. If the highway commission should in the future find it necessary to make changes in the highway, or decline to make crossings, cattle passes, and culverts, the result would be to cut off completely half of appellee's farm from the buildings from which farming operations are conducted. Some or all of these reflections may have entered into the minds of the witnesses and accounted for the wide range in the estimates of damages. Thus, the highest estimate in his behalf was $7,080, and the lowest $5,080; the highest estimate in behalf of appellant was $2,200, and the lowest $1,500. The commission appointed originally assessed the damages at $2,275, and the jury in the instant case returned a verdict for $4,750.

944

In the circumstances disclosed by this record we do not feel warranted in substituting our judgment for that of those who testified to the value, and that of the jury which fixed the damages.

It follows that the judgment of the trial court was right, and it is affirmed.—Affirmed.

ANDERSON, DONEGAN, PARSONS, and STIGER, JJ., concur.