HARRY O. CUTLER et al., Appellees, v. STATE OF IOWA et al., Appellants.

No. 44115.

March 15, 1938.

Rehearing Denied June 24, 1938.

John H. Mitchell, Attorney General, T. J. Mahoney, Special Assistant Attorney General, F. J. Lund, and M. J. Mitchell, for appellants.

Burnstedt & Hemingway, for appellees.

Mitchell, J.—Harry O. Cutler, Verne Cutler and Elma Webb are the joint equal owners of the southwest quarter and the south half of the southeast quarter of section 33, and also of 26 acres in the south half of the southwest quarter of section 34, all in township 89, range 26, west of the 5th P. M. Harry O. Cutler and Verne Cutler also own an undivided one-third of the north half of the southeast quarter of section 33, and J. F. Webb owns an undivided one-ninth interest and Elma Webb an undivided two-ninths interest in the north half of the southeast quarter of section 33, township 89, range 26.

Primary highway No. 20 runs in an easterly and westerly direction along the south line of sections 33 and 34. Primary

highway No. 60 runs north from No. 20, forming a "T" intersection at the south edge of the land in controversy. Both highways No. 20 and No. 60 had been there for years. The occasion for the present condemnation is that No. 60 was paved and the intersection was converted from a "T" into a "Y" to facilitate and safeguard traffic. The strips taken were to widen the highway and afford room for the arms of the "Y". The amount of acreage taken is not large. It does not divide the farm and is along the edge of same. Unfortunately, however, located upon that part of the land the Highway Commission desired is an eight-room house, also what is designated as a fuel house or shed, a cistern, and some seventeen shade trees. The property was condemned and the sheriff's jury fixed the amount of damage at $2,100. The owners were dissatisfied with this amount and appealed to the district court, claiming that they were entitled to $10,000. There was a trial to a jury, which returned a verdict for $4,000. The Highway Commission was dissatisfied with this amount and has appealed.

■■■ I. It is claimed that the court erred in giving instruction No. 10. The argument is advanced that it is practically the same instruction which this court disapproved in the case of Hoeft v. State of Iowa, 221 Iowa 694, 701, 266 N. W. 571, 575, 104 A. L. R. 1008. An examination, however, of the instruction given in the case at bar, and the instruction given in the Hoeft case, shows clearly that there is a marked distinction. In the Hoeft case the jury was given the instruction:

" 'You have the right and should take into consideration your own knowledge of the values of the property.' " Whereas, in the case at bar the court said:

"You have a right to weigh and judge the soundness of opinions thus expressed by your own judgment in the light of your own experience and observation with respect to such matters."

Thus, in the Hoeft case the jury was directed to take into consideration its own knowledge of the value of the property, whereas in the case at bar the jury was allowed to call to its aid its own knowledge, learning, and experience in estimating the weight to be given to the testimony of an expert as to value. Certainly, the jury has a right to hear the testimony of an expert in the light of its reasonableness, credibility, and conform-

ity with proved facts, and in so doing it may use ordinary knowledge. The jury in the case at bar inspected the premises and the court's instructions simply directed the jury to hear the testimony of the experts in the light of its own experience.

▐█▌ II. Appellants complain bitterly because the court refused to give certain requested instructions, one of which is as follows:

"9. * * * In this case the law presumes that the highway will be used for lawful purposes and you will assume in estimating plaintiff's damages that the highway will be used in a lawful manner. You will also assume that the improvement of the highway will be made in a proper manner."

We can see no reason for the giving of this instruction. There was no claim made in the petition, or by any evidence offered, that the highway would be used by the State for unlawful purposes.

In the case of Maxwell v. Iowa State Highway Commission, 265 N. W. 899, this court said at page 906: [Substituted opinion, 223 Iowa 159, 271 N. W. 883.]

"The cases cited by the appellants to the effect that all of the issues made in the case must be submitted to the jury and that the jury must be limited in awarding damages to the damages shown in the evidence, simply refers to a general rule applicable to tort cases and perhaps some others, but such rule is not applicable in condemnation cases, because in the latter cases there is only the one issue, as we have mentioned, to be submitted to and determined by the jury."

▐█▌ III. It is claimed that the court erred in giving instruction No. 8. There was involved in the case at bar 240 acres of land owned by appellees, and in addition to that there was an 80-acre tract, abutting the 240-acre farm, which the evidence showed was owned by appellants together with one Webb; that these two farms were operated together and had been for a period of more than ten years; that because of their ownership and control of the abutting 80-acre tract, taken in connection with the improvements adjacent thereto, it permitted the appellees the possibility of dividing their land into two separate farms for operating and sale purposes. We quote the material part of the instruction:

"Now you are instructed that such 80 acre tract is not a part of the farm to which any damage can be attributed. But you have a right to take into consideration the entire circumstances surrounding the ownership of plaintiffs' farm; and in fixing the values of the plaintiffs' land both before and after the condemnation, you have a right to take into consideration the advantage of any control plaintiffs may have over said abutting 80 acres, and the advantage, if any, they may have had before the condemnation of treating, operating, and selling said premises as two separate and independent farms, and the extent to which such advantage has been impaired, if any, by this condemnation."

Here we have a situation where the 240 acres and the 80 acres abutting were owned and controlled by these parties for a period of ten years. Due to the manner of the construction of the improvements and to the fact that there were two sets of buildings, there was an advantage to the parties interested in the operation of the farm. The court specifically instructed the jury that it could not return any damage to the abutting 80 acres, and simply permitted the evidence to go in for the purpose of showing how the farm was used as a whole.

Appellants rely on the case of Duggan v. State, 214 Iowa 230, 242 N. W. 98, where the trial court permitted the claimants, despite the different ownerships, to treat two tracts of land as one farm and measure the damages accordingly. In the Duggan case there was a diversity of ownership and the plaintiffs claimed damage to both farms. The trial court permitted the two tracts of land to be treated as one farm. In the case at bar the trial court instructed the jury that it could not allow any damage on account of the north 80 acres, and the evidence was admitted for the sole purpose of showing how the farm was used as a whole.

While we do not approve of the instruction given in this case, considering all of the facts, we do not believe it was prejudicial.

■■■ IV. Other objections are urged but the one most strenuously argued is that the verdict is excessive.

It is the contention of appellants' able counsel who prepared the briefs that the sum of $1,500 is the maximum amount to which appellees would be entitled. The sheriff's jury allowed

$2,100 and the jury in the case at bar allowed $4,000. There is a serious dispute in the evidence of the witnesses as to the value. The amount of damage, according to the testimony of appellees' witnesses, ranges from $4,500 to $6,500; according to the testimony of appellants' witnesses, from $1,800 to $2,600. If the writer of this opinion had been a member of the trial jury in this case he might have had some doubt as to whether there was the amount of damage which the jury returned, but this court does not sit as a jury and where there are disputed fact questions, as there were in this case, we surrender to the jury the right to decide those questions and if there is competent evidence upon which the jury could reach the verdict it did reach, we do not interfere.

Here we have a case in which the amount of acreage taken was not large. On that small piece of land there were certain improvements, consisting among other buildings of a house, claimed by some witnesses to be in good shape and by others— for the opposite side—not to be of very much value. The lowest value placed upon the house by appellants, after allowing depreciation, was $900, whereas there is evidence that it was worth $2,600 to $2,800. There were sheds which were destroyed, and there were shade trees, seventeen in number, which were taken. True, appellants say they were old; that they were ragged. They even offered an expert, who testified as to the length of time the trees might be expected to live, under normal conditions. Other witnesses described these trees as being good shade trees. While these witnesses were not experts in regard to how long a tree lives, they did know as farmers and neighbors that they served the purpose of furnishing shade and protection, and in their humble eyes, beautified the spot where the appellees had had their buildings. Fences were destroyed. A cistern and several small improvements around the buildings were taken. There is evidence in the record that this was the best building site on the farm. No doubt another place could be found to build, but, after all, the owner has a right to say where he shall build his improvements, and when the highway commission takes that part of the farm where the owner has constructed his improvements, the fact that he and his neighbors testify that was the best building spot on the farm should be taken into consideration as an element of damage.

It may be conceded that the verdict was liberal, but in the

words of the late Justice Evans, speaking for this court in the case of Cory v. State, 214 Iowa 222, at page 228, 242 N. W. 100, 103:

"This is not the criterion which determines the length of arm of the appellate court. The district court has more, rather than less, discretion than we, to interfere with the verdict of a jury. The verdict comes to us as the finding of the jury, which has been approved by the trial court. Proper grounds of interference on our part, with a verdict as being excessive, have been considered and announced many times in our previous cases, and we need not repeat the discussion here. Longstreet v. Town of Sharon, 200 Iowa 723, 205 N. W. 343; Kosters v. Sioux County, 195 Iowa 214, 191 N. W. 993; Bracken v. City of Albia, 194 Iowa 596, 189 N. W. 972; Darst v. Fort Dodge, Des Moines & Southern R. Co., 194 Iowa 1145, 191 N. W. 288. The market value of a farm is a matter of approximation at best. Its determination involves personal opinions and psychological factors which may not be measured with mathematical accuracy. Different persons, exercising their judgment honestly, may vary greatly in the respective results. Where competent and disinterested persons are brought together as a jury, and in the light of all the facts as presented by the litigants put their varying opinions and psychologies into the debate and finally agree upon a result, it must ordinarily be deemed the best approximation available to human judgment."

There is evidence to sustain the verdict of the jury, and it necessarily follows that the case must be, and it is hereby, affirmed.—Affirmed.

STIGER, C. J., and ANDERSON, DONEGAN, HAMILTON, MILLER, and SAGER, JJ., concur.