H. A. STONER et al., Appellees, v. IOWA STATE HIGHWAY COMMISSION, Appellant.

No. 44714.

AUGUST 1, 1939.

Fred D. Everett, Attorney General, G. H. Clark, Jr., Spec. Asst. Attorney General, and George C. Gorman, for appellant.

L. D. Dennis, for appellees.

HAMILTON, J.—This is a condemnation proceeding whereby the State Highway Commission acquired a strip of ground 17 feet wide on each side of highway 161 which separates the plaintiffs' 80-acre farm in the middle, leaving one 40 on the east side of the road and the other 40 on the west side of the road. The purpose of acquiring this additional strip was to widen the 66-foot road which would enable the highway commission to widen the shoulders, broaden and level out the ditches and cut down the embankments for the purpose of not only making the highway more safe for travel but to enable the planting of trees and shrubbery to beautify the highway. The damages were fixed by the appraisers, appointed by the Chief Justice of this court for that purpose under the provisions of the statute, at $358. From this award, plaintiffs appealed to

the district court where the matter was tried anew to a jury which awarded damages to the landowners, the appellees, in the sum of $2,000. There was a motion for new trial and also objections and exceptions to instructions which were overruled and the State Highway Commission has appealed.

Plaintiffs' 80-acre farm is located one-fourth mile south of the city limits of the city of Cedar Rapids, Iowa, on highway 161 which is the principal thoroughfare between Iowa City, Iowa, and Cedar Rapids. The residence, garage, barns, barn lots, orchard and grove of trees, surrounding the residential portion of the premises, are situated on the west side of the highway, the house facing the east. There are also barnlots, a deep well, windmill and a water tank on the east side across from the residence and barn lots making it necessary for the plaintiff to cross over the highway in his farming operations and in handling his stock. Water is piped underground across the road. Plaintiffs' large magnificent home is situated on a knoll sloping both towards the north and towards the south. Originally the grounds were landscaped and many trees were planted to beautify the home. The house sits back about 50 feet from the highway line. Directly north of the house is a grove of evergreens making a dense windbreak and on farther north is an orchard and some other trees. In front of the house and nestled against the evergreen windbreak is a small flower garden. South and east of the house is a large spacious lawn at the rear border of which is a hedge of shrubbery and along the south side of which are trees and shrubbery separating the lawn from the barn lots and driveway to the barn and garage in the rear of the lot. Directly in front of the house and just inside the yard fence stood four, gorgeous, giant, symmetrical, golden or hard maple trees and to the south of these, in a corner of the yard, stood a large spruce, forty feet high, towering above the surrounding trees and shrubbery in all its natural grandeur, unblemished by the storms of its forty years of existence and on the topmost bough of which the friendly cardinal could perch and give voice to his musical morning call. Across the road stood two beautiful sweet-smelling locust and a large walnut tree and to the north and south of the front yard were apple trees, cedar trees and ordinary maple trees. Nineteen in all of these trees, some of them planted one-half century or

more ago, including the four hard maple trees and the giant spruce were within the 17-foot strip taken. This strip, it will be noticed, constituted approximately one third of the 50-foot front lawn. The amount of land taken was small—one and two-tenths acre in all—but, in this case, the quantity must be considered in connection with the spot from which it was taken. It takes the greater part of a lifetime to grow these magnificent hard wood, slow growing, ornamental trees. Someone selected this spot and carefully laid out the grounds, planted the trees, shrubbery, orchards and windbreaks and has, all these years, carefully tended and cared for the same until they have become as much a part of the home and contribute as much to the comfort and enjoyment of the family as the enclosures made of wood, brick and stone.

In this appeal, we are confronted with 23 separate assignments of error, most of them relating to the giving of instructions and failure, on the part of the court, to give requested instructions. Most of the questions presented have been before us, some of them quite recently, and have been determined adversely to appellant's contentions. Perhaps counsel for appellant is pursuing the policy of the widow spoken of in Luke 18:2-5, wherein it is stated:

" * * * there was in a city a judge, which feared not God, neither regarded man:

"And there was a widow in that city; and she came unto him, saying, Avenge me of mine adversary.

"And he would not for a while; but afterward he said within himself, Though I fear not God, nor regard man:

"Yet, because this widow troubleth me, I will avenge her, lest by her continual coming she weary me."

After all, judges are human.

The principal bone of contention is the size of the verdict, and, in considering this question, it must be kept in mind that, in this condemnation, the highway commission was molesting a man's home. Constitutional provisions, as well as legislative enactments and judicial decisions, have declared the policy which recognizes the sanctity of the home and the right of every free man to occupy and enjoy the same unmolested.

This, of course, is subject, as are all other individual rights, to the higher and greater right known as the public welfare.

When it is thought necessary, by the powers that be, to appropriate property by the power of eminent domain, the lawgivers have seen fit not to lodge the duty of fixing the damages in the hands of the court but in a jury of freeholders and courts have recognized that, in this sort of a proceeding, the question of damages to be assessed for the land appropriated is peculiarly one for the jury.

As stated by the distinguished jurist, the late Justice Evans, in Cory v. State, 214 Iowa 222, 228, 242 N. W. 100, 103:

"The function of this court in such a case is not to review the evidence and determine therefrom the amount which we think would have been a proper award. In order to justify our interference with the verdict on the ground of its being excessive, we must find that the jury abused its functions upon the record. * * * It may be conceded that the verdict was liberal, and that it was more so than a court without a jury would have awarded. But this is not the criterion which determines the length of arm of the appellate court. The district court has more, rather than less, discretion than we, to interfere with the verdict of a jury. The verdict comes to us as the finding of the jury, which has been approved by the trial court. Proper grounds of interference on our part, with a verdict as being excessive, have been considered and announced many times in our previous cases, and we need not repeat the discussion here. [Citing cases.] The market value of a farm is a matter of approximation at best. Its determination involves personal opinions and psychological factors which may not be measured with mathematical accuracy. Different persons, exercising their judgment honestly, may vary greatly in the respective results. Where competent and disinterested persons are brought together as a jury, and in the light of all the facts as presented by the litigants put their varying opinions and psychologies into the debate and finally agree upon a result, it must ordinarily be deemed the best approximation available to human judgment."

We have recently approved the foregoing pronouncement in the case of Cutler v. State, 224 Iowa 686, 691, 278 N. W. 327, 329, in an opinion by Chief Justice Mitchell. This case,

also, involved the taking of residential property for highway purposes.

The judgment and honest opinion of men vary greatly in respect to real estate values, generally, and this is especially true when it comes to estimating values of ornamental shade trees and. other improvements made use of for decorative and ornamental purposes. This is illustrated by the testimony on values in the instant case. The average difference in value before and after taking as estimated by plaintiffs' witnesses was $4,455 whereas the condemnation commission fixed the value on an average at $358 and the witnesses for appellant placed the damage at $383.37. The verdict of the jury of 12 men and women placed the damage at $2,000. The witnesses on value on both sides were all realtors with the exception of one of defendant's witnesses who was a banker. This variance can be accounted for to some extent upon the theory that the trees were not destroyed but left standing in the highway and the grader ditch and embankment in front of the residence sloped back and leveled off, improving the appearance. The examination of the witnesses indicates an attempt, on the part of the state, to keep this matter quite prominent and, throughout the trial below and in argument before this court, counsel for appellant has sought diligently to make this a major consideration. One of the defendant's witnesses even went to the extent of stating that he considered the trees a menace because they were an obstruction to the vision on the highway and this seemed to outweigh everything else with him. As stated in the Cutler case, supra:

"There is a serious dispute in the evidence of the witnesses as to the value. * * * where there are disputed fact questions, as there were in this case, we surrender to the jury the right to decide those questions, and if there is competent evidence upon which the jury could reach the verdict it did reach, we do not interfere."

This is the rule long adhered to in this state, and unless the verdict is so excessive as to indicate, clearly, passion and prejudice, on the part of the jury, it should not be disturbed.

We have often said we are not permitted to sit as triers of fact and substitute our judgment, as to the amount of dam-

ages to be awarded, for the judgment of the jury. Bracken v. City of Albia, 194 Iowa 596, 600, 189 N. W. 972.

"A condemnation case is one in which the amount allowed is peculiarly within the province of the jury; and unless the same be shown to be so extravagant as to be wholly unfair and unreasonable, this court has repeatedly refused to interfere with the verdict of the jury." (Citing large number of cases.) Longstreet v. Town of Sharon, 200 Iowa 723, 727, 205 N. W. 343, 344.

See, also, Maxwell v. Iowa State Highway Commission, 223 Iowa 159, 271 N. W. 883.

It is also true, as stated in the case of Youtzy v. City of Cedar Rapids, 150 Iowa 53, 57, 129 N. W. 351, 352, that:

"The court should be, and doubtless always will be, no less ready to interfere and set aside a clearly excessive verdict in condemnation proceedings than in actions of another character, but it is to be remembered that in such proceedings the lot owner is not a willing seller of his property, and he is forced to yield his title and surrender his estate in the interest of the general public, not infrequently to his great and irreparable inconvenience, if not actual loss."

The question is whether the verdict of $2,000 was so clearly excessive as to indicate the presence of passion and prejudice or so extravagant as to be wholly unfair and unreasonable. In the light of the foregoing pronouncements, under the record in the instant case, we think the answer must be in the negative.

In view of the fact that we have so recently, in Cutler v. State, supra, and Moran v. State Highway Commission, 223 Iowa 936, 274 N. W. 59, given consideration to the controversial questions which are again urged in this case and have determined them adversely to appellant's contentions, we do not deem it necessary or expedient to again debate or reconsider the same. While there may be some difference in some phases of the questions raised on this appeal, in principle they are the same as those heretofore determined.

One witness was asked a hypothetical question as to whether the additional trouble experienced by plaintiff in driv-

ing his stock across the highway, since it had been widened, would affect the values of the farm. Perhaps this was of doubtful propriety but it related to a matter so simple and self-evident that it is difficult to see how the opinion of the witness could add any force or prejudicial effect thereto.

██ Complaint is also made because Mrs. Stoner was permitted to testify, over objection, to the fact that, since the road has been widened and the road ditch widened and leveled off and these luxuriant shade trees, that once adorned the grounds of the plaintiffs, left out in the highway, folks stop there day and night; that weary tramps and hitchhikers now enjoy the shade and shelter and, in the nighttime, lovers passing by are attracted by the dense shadows that spread out upon the green sward, finding it an alluring spot and sometimes the conviviality and mirth of these passers-by, as they sojourn for a time beneath these sheltering trees where once the plaintiffs' children were wont to romp and play, becomes so loud and boisterous as to disturb the peace and quiet of these farmer folk who find it necessary, after wending their way from the fields and attending to their chores and the various burdensome duties, to get a little sleep at night in order to be refreshed in the morning so that they may again take up their daily toil of life. Appellant says this was incompetent because it is not responsible for the use of the highway and such is not a proper element of damage and that this was an attempt to ''build a bug-a-boo to flout before the jury''. We think the matters elicited were such as might reasonably be expected to occur as a natural result of the way the improvement was left and undoubtedly would detract from the desirability of the property for residential purposes. Perhaps, nothing testified to by this witness could be said to be unlawful unless it be assumed that, because at times empty whisky and beer bottles were found lying around, their contents had been unlawfully consumed by the sojourners. The evidence goes to the point that the peace and quiet and privacy of this home, which had hitherto been enjoyed by the family of plaintiff, were now disturbed.

The rule is well settled that it is permissible for the landowner to show all the detrimental elements affecting the value of the farm. The rule is laid down in the case of Ranck v.

City of Cedar Rapids, 134 Iowa 563, 565, 111 N. W. 1027, 1028, that:

"Generally speaking, the true rule seems to be to permit the proof of all the varied elements of value; that is, all the facts which the owner would properly and naturally press upon the attention of a buyer to whom he is negotiating a sale and all other facts which would naturally influence a person of ordinary prudence desiring to purchase."

Applying this rule, in Randell v. Iowa State Highway Commission, 214 Iowa 1, 10, 241 N. W. 685, 690, we said:

"If, then, the landowner may go to that length in explaining the good points of his property before the condemnation, why should he not also, after condemnation, show, within proper limitations, the detriments thereto produced by the condemnation? To the extent that a supposed purchaser will be attracted to the property by the good points brought out before condemnation, the same purchaser will be deterred from buying the property after condemnation because of the damages caused thereby. · That being true, it is important to the owner that he, within proper limitations, be able to call the jury's attention to the undesirable conditions on the property brought about by the condemnation. Hubbell v. City of Des Moines (166 Iowa 581, 147 N. W. 908, Ann. Cas. 1916E, 592), supra. Otherwise private property might be taken without just compensation, contrary to Article I, section 18, of the Iowa Constitution.

"So, in the case at bar, it was proper for the appellees to introduce evidence indicating the necessity for the removal and replacement of the fence."

See, also, Maxwell v. Iowa State Highway Commission, supra.

In the case of Kosters v. Sioux County, 195 Iowa 214, 218, 191 N. W. 993, 995, we said:

"In determining the amount of damages, it was proper for the jury to take into consideration all pertinent facts pertaining to the condition of the farm before and after the construction of the road."

Undoubtedly, appellees were entitled to show to the jury

the condition the property would be in after the condemned strip had been appropriated and used for the purpose for which it was taken. Kukkuk v. City of Des Moines, 193 Iowa 444, 187 N. W. 209; and Randell v. Iowa State Highway Commission, supra.

Complaint is also made as to the manner of stating the issues, appellant contending the court embodied the entire contents of the petition. The objection is not well taken. The statement is perhaps more extended than was absolutely necessary but is not open to the charge that it is a mere copy of the pleading.

As the law now stands, the pleader is required to state specifically the items of damage and the amount thereof. Code section 7841-c1. This the plaintiffs did in the instant case and such matters were as succinctly stated to the jury in the statement of the case as could well be done and at the same time give an intelligent and understandable resume of the elements upon which the plaintiffs based their claim for damages and the amount thereof. We are not all equally gifted with the faculty of brevity of expression and this court should not be too exacting of trial courts touching such matters. We are aware of what we recently said in the case of Hammer v. Liberty Baking Co., 220 Iowa 229, 260 N. W. 720; and in Leete v. Hays, 211 Iowa 379, 233 N. W. 481; Welton v. Iowa State Highway Commission, 211 Iowa 625, 233 N. W. 876, condemning the practice of trial courts substantially copying the pleading in stating the issues to the jury but do not feel that the statement of the court, in the instant case, falls under the condemnation pronounced by the court in the cited cases.

We have carefully examined the appellant's contentions relating to the instructions and have reached the conclusion that they are without merit. The appellant prepared a full set of instructions. Fifteen of these were given as requested and two others only slightly changed. Those refused were, under the record, properly refused. On the whole, the instructions were more favorable to the appellant than it was, by right, entitled. Most of the matters contained in the requested instructions that could be properly included were covered by the instructions given. Every material matter was included. The

issue was simple and related to but one question—the amount of plaintiffs' damages.

In three of the instructions, the court cautioned the jury that its verdict could not be more than a stated figure which was the amount claimed in the petition, whereas, the highest amount fixed by the witnesses did not equal the amount claimed in the petition, but, since the verdict was for only $2,000 and the amount claimed in the petition was over $5,000, there was no prejudice. Cory v. State, supra.

Much complaint is made because appellant was not permitted to plead or prove matters relating to the manner of construction of the improvement which would tend to ameliorate the damages. This same matter was before us in the Moran case, supra, and was decided adversely to appellant's contention. Furthermore, as a matter of fact, the manner in which the work was done and the condition in which the highway was left were in one way or another all gotten before the jury. Photographs were introduced and witnesses testified concerning the improvement and, so far as we can discern, there wasn't a thing material, bearing upon the question of damages and the condition in which the improvement was left, that was not shown and, in addition to this, the jury was allowed to view the premises. Of course, it would have been improper for the jury to consider any advantage to the property in determining the amount of plaintiffs' damages and the court properly so instructed the jury.

On the whole record, we are satisfied the parties to this litigation received fair and impartial treatment at the hands of the court. The jury, the regularly constituted body to pass upon the question of damages, has spoken.

There being no prejudicial error, the case must be and is affirmed.—Affirmed.

SAGER, MILLER, STIGER, BLISS, HALE, and MITCHELL, JJ., concur.

OLIVER, C. J., dissents.

OLIVER, C. J. (dissenting)—The measure of damages was the difference in value before and after the taking. This difference was largely based upon certain ornamental and shade

trees situated in the narrow strip condemned. Therefore, it does not appear logical to hold that additional damage could result from permitting these trees to remain standing, and improving the surroundings by widening and leveling the ditch between them and the traveled portion of the highway. The effect of this decision is that the property owner may collect double damages, once because the trees were an asset to his property and once because the identical trees constitute a detriment to the property.

Over objections the court admitted evidence of alleged disturbances upon the highway, subsequent to the taking, which appellee claimed made his remaining property less desirable and decreased its value accordingly. I think these rulings were erroneous for the following reasons:

(1) The beautification of the highway should not subject the commission to additional damages for a strip of land taken to increase its width.

(2) There is no competent proof that such beautification was the proximate cause of the alleged disturbances.

(3) The Highway Commission should not be held liable for the acts of strangers who were traveling, loitering or sojourning upon the highway whether such acts were lawful or unlawful.

Nor in my opinion do the authorities cited by the majority upon this point support the holding. I would reverse.