CARLTON C. WILSON et al., Appellees, v. JOSEPH B. FLEMING et al., Trustees; CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellants.

No. 47128.

(Reported in 31 N. W. 2d 393)

720

MARCH 9, 1948.

REHEARING DENIED MAY 7, 1948.

Richard A. Stewart, of Washington, and R. L. Read and A. B. Howland, both of Des Moines, for appellants.

Edmund D. Morrison, Jr., and Alfred E. Baldrige, both of Washington, for appellees.

GARFIELD, J.—Plaintiffs other than Heck own a farm of 298 acres (before the condemnation) southeast of Washington, Iowa. Heck occupied the farm—plaintiffs say as tenant. Defendant railroad contends he was a partner of the owners. Defendant condemned a strip of 9.84 acres for right of way across the farm. (We disregard the fact trustees for the railroad are also defendants.) The strip separates the buildings, except for a feeding barn near the center of the land, from most of the remainder of the farm.

On June 26, 1946, a sheriff's jury awarded plaintiff owners damages of $21,625 and plaintiff Heck damages of $1,000. Defendant and later plaintiffs appealed from such awards to the district court. Trial resulted in verdict for the owners of $24,683 and for Heck of $2,600, which the court reduced to $2,000. The court also allowed plaintiffs' attorneys $3,000, of which $250 was for services for Heck.

The farm consists of a central 160-acre square (apparently 162 acres in fact), 40 acres abutting the south half of the 160 on the east, a fractional 80 of 68.68 acres the east half of which is south of the southwest 40 of the 160, and 26⅔ acres west of the north end of the 160. The right of way enters the farm

from the northeast a little east of the center of the north line of the 160, extends southwest and leaves the farm about the center of the south line of the northwest 26⅔ acres. Through the 160 the right of way is 175 feet wide, an area of 6.32 acres. Through the 26⅔ acres it is 200 feet in width, an area of 3.52 acres.

This plat will assist in visualizing the physical "layout":

The small rectangle near the center of the plat is a feeding barn built about 1935, with a windmill near it. The rest of the buildings are in the northwest corner of the 160. They consist of a large house with about twelve rooms, a barn east of the house, two double corncribs southwest of the barn, two 8-sided cribs or granaries west of the larger double crib, and a machine shed about ten feet north of the north right-of-way fence. The buildings have been kept in good condition.

The farm is a combination grain and stock farm. Grain produced on the farm is not sold but is fed there. Cattle and hogs fed on the farm brought over $31,000 in 1946. Fences, all built in the last twelve years, are hog tight. There are about 84 acres of pasture on the farm: 34.1 acres in the southeast 40 (the east 20 acres of this has been farmed and can be put in

crop), 20.5 acres near the middle of the south half of the central 160, 15.7 acres south of the 20.5 acres and at the east end of the south 68.68 acres (the west 5 acres of this 15.7 could be cultivated if some trees were taken out), and 13.7 acres in the northwest corner of the farm. The remainder of about 210 acres was under cultivation in 1946. There is a draw or ravine through the east 34.1 acres of pasture, another running south from near the southeast corner of the feeding barn lot and a stream and draw in the northwest 13.7 acres, the roughest land on the farm. There is a flowing well in this last tract.

The north 80 of the central 160 has the best soil—very productive Grundy silt loam. Most of this 80 was in corn in 1946 and yielded about 100 bushels to the acre. 1946 was an unusually good year however. The crop land in the south half of the 160 produces 5 to 10 bushels to the acre less corn and the farm land in the south 68.68 acres even less corn by about 5 bushels to the acre.

The right of way through the farm is in a cut. At the north farm line, the top of the rails will be about two feet below the natural surface of the ground. At the south line of the 26⅔ acres such distance is about eight feet. About 500 feet southwest of plaintiffs' land the track is about level with the natural surface. Plans call for a single track although it is one of defendant's main lines over which high-speed trains, up to ninety miles an hour, travel. In the month preceding the trial from sixteen to twenty-two trains traveled over the line each twenty-four hours.

South of the buildings is a farm crossing over the railroad. The top of the rails at the crossing will be about the same elevation as the ground at the gate along the north right-of-way line but about 6½ feet lower than the ground at the south right-of-way gate. For 55 feet of the distance between the south rail and the south gate at this crossing there is an upgrade of ten per cent. From the end of the 55 feet to the gate the upgrade is nearly four per cent.

I. Defendant first contends the verdicts of $24,683 to the owners and $2,600 to Heck, reduced by the court to $2,000, the amount claimed in plaintiffs' petition, were so excessive as

to indicate passion and prejudice of the jury. We think the amounts of recovery present no ground for us to interfere.

Plaintiffs produced six apparently well-qualified value witnesses. The average estimate of values of the farm given by them is $83,657 immediately before the condemnation and $48,870 immediately thereafter, a difference of $34,787. Defendant used five such witnesses, perhaps as well qualified although less familiar with the farm. Their average estimate of values is $60,487 before and $50,897 after the condemnation, a difference of $9,590.

The jury could find these are some of the matters that contribute to the owners' damage, measured ultimately by the difference in value immediately before and after the condemnation: About 10 acres of the best land were taken, separating most of the farm from most of the buildings. It will be impractical to use except for pasture two triangular tracts of 6.9 and 5.7 acres of good crop ground north of the railroad. The .9 acre in the southeast corner of the northwest 26⅔ acres is rendered of little value. There will be "point rows" along the west side of much of the north 80. The location of the right of way will cause permanently great inconvenience and added expense in the operation of the farm, rendering it less salable and substantially reducing its rental value. The railroad will be a hazard as well as an annoyance because of the noise, vibration, smoke and dirt.

As to the damage to Heck's interest. Defendant took possession of the condemned strip July 20, 1946. The corn thereon was then "laid by." It would have produced nearly 1,000 bushels and the value of Heck's share would have approximated $600. There is testimony of considerable inconvenience and annoyance as well as added expense to Heck in the operation of the farm during the construction period. The amount allowed Heck by the jury is within the testimony of value witnesses.

Nothing is shown which would tend to arouse passion or prejudice. The verdict for the owners exceeds the condemnation award to them by less than fifteen per cent. It is well within the evidence. The jury was taken to view the farm. The trial court approved the amounts of the judgment. The damages cannot be measured with mathematical accuracy but at best

can only be approximated. They depend, to a considerable extent, on matters of opinion. We cannot substitute our judgment for that of the jury.

In support of our conclusion see Kosters v. Sioux County, 195 Iowa 214, 216, 217, 191 N.W. 993; Kemmerer v. Iowa State Highway Comm., 214 Iowa 136, 142, 241 N. W. 693; Cory v. State, 214 Iowa 222, 229, 242 N.W. 100, 103, and citations; Cutler v. State, 224 Iowa 686, 691, 692, 278 N.W. 327; Stoner v. Iowa State Highway Comm., 227 Iowa 115, 287 N.W. 269.

■ II. On cross-examination of plaintiff Heck and some of plaintiffs' value witnesses and on direct examination of one of its witnesses, defendant sought to show the farm could be more efficiently operated by moving the cribs and granaries to the vicinity of the feeding barn and relocating the machine shed south of the railroad. By another of its witnesses defendant sought to show the cost of removing the machine shed across the railroad would be $750, and the cost of moving the large corncrib and each of the two granaries to the vicinity of the feeding barn would be $910 and $175 respectively. Plaintiffs' objections to these attempts were sustained. Defendant contends the offered evidence was proper because it was entitled to develop fully any facts which might be considered by a prospective purchaser.

Some testimony of this character, though not as to cost of removal of buildings, was received. Plaintiffs' first value witness testified on cross-examination it is customary to locate storage facilities for feed close to the barns where the feeding is done; a prospective purchaser could well consider relocating or constructing additional storage facilities on the feed lot; if the corn were fed there that would eliminate hauling the corn across the railroad and then back to the feed lot.

Plaintiff Carlton Wilson, who managed the farm for the owners (his sisters and himself), said on cross-examination that if cribs were provided near the feeding barn it would be unnecessary to move across the railroad the corn to be fed at the barn and that moving the machine shed south of the railroad would eliminate taking most of the machinery across the

railroad, but he had not considered the advisability or cost thereof.

The evidence shows without dispute there is space near the feeding barn for cribs and bins. Also, in addition to the testimony to such effect, it is obvious that if storage facilities for grain were provided south of the railroad, it would not be necessary to haul the grain to be fed there from the south part of the farm across the right of way.

We are not prepared to hold the rulings complained of constitute reversible error. Essentially defendant was attempting to show that the relocation of the buildings would reduce the damage resulting from the condemnation because of the comparatively small cost of such removal. Plaintiff owners were under no legal obligation to consent to the removal of their buildings to some other point on the farm nor should their refusal to do so be made a basis for denying them damages resulting from the separation of the improvements from the rest of the farm. Kemmerer v. Iowa State Highway Comm., 214 Iowa 136, 142, 241 N.W. 693. The owner has a right to say where he shall build his improvements. Cutler v. State, 224 Iowa 686, 691, 278 N.W. 327.

"When it is sought to condemn private property for public use, the owner is entitled to just compensation for any property taken or injured, such compensation to be estimated according to the existing condition of the property at the time. He is not required to remove buildings or other things attached to the realty in order to lessen his damages * * *." Chicago, S. F. & C. Ry. Co. v. Ward, 128 Ill. 349, 362, 21 N. E. 562.

It is error to admit evidence, over the owner's objection, of the cost of removing buildings from the land actually taken. Department of Public Works and Bldgs. v. McBride, 338 Ill. 347, 350, 170 N.E. 295, 297. Why should evidence of the cost of removing buildings from one part to another of the land damaged but not actually appropriated rest on a different basis? We have been cited to no decision, and have found none, which upholds the right of the condemnor in a case like this to show the cost of removing buildings from one part of the land to another.

Des Moines Wet Wash Laundry v. City of Des Moines, 197 Iowa 1082, 198 N. W. 486, 34 A. L. R. 1517, cited by defendant, is not in point. There a leasehold interest in a laundry was condemned. The condemnor did not want the fixtures, the lessee had procured other quarters and had elected to and did move the machinery to the new location. It was held the lessee might show the cost of removing the fixtures as some evidence of the value of his leasehold.

The Wet Wash Laundry case recognizes the difficulty of proving the value of a leasehold since ordinarily there is no market for it. Also that the condemnor must ordinarily pay for fixtures on the property appropriated unless it does not want them and the owner elects to take them. (See Jackson v. State, 213 N. Y. 34, 106 N. E. 758, L. R. A. 1915D, 492, Ann. Cas. 1916C, 779, and note 780.) In the event of such election, damages otherwise recoverable are reduced to the extent of the value of the fixtures, but such value is diminished by the necessity of removing them. See City of St. Louis v. St. Louis, I. M. & S. R. Co., 266 Mo. 694, 182 S. W. 750, L. R. A. 1916D, 713, Ann. Cas. 1918B, 881, 882, from which we quote in the Wet Wash Laundry opinion.

There is much conflict of authority as to the admissibility of the cost of removing fixtures even under the circumstances present in the Wet Wash Laundry case. See annotation 34 A. L. R. 1523; United States v. General Motors Corp., 323 U. S. 373, 65 S. Ct. 357, 89 L. Ed. 311, 156 A. L. R. 390, and annotation 397. We know of no authority for extending the rule of the cited case to the case at bar.

III. A value witness for plaintiffs was asked on cross-examination, "We have spoken of several farms that have sold and have been intersected by a railroad track. Isn't it a fact that these farms have sold at very good prices?" The court sustained plaintiffs' objection as argumentative, calling for an opinion and conclusion. The ruling presents no abuse of discretion.

The scope of cross-examination of value witnesses is largely within the discretion of the trial court, although considerable latitude is usually allowed. Hayes v. Chicago, R. I. & P. Ry.

Co., 239 Iowa 149, 30 N. W. 2d 743; 2 Nichols on Eminent Domain, Second Ed., 1191, section 453. This witness had already stated on cross-examination the prices for which he understood all but one of the other farms had sold. As to the one, he had no knowledge. Defendant was not entitled as a matter of right to pursue the subject to the extent attempted.

Another value witness for plaintiffs testified on cross-examination he had gone over, at defendant's request, three other farms through which defendant had condemned rights of way. He was then asked if, after looking over an unimproved 80 cut by the railroad, he expressed the opinion it was reasonably worth $55 before and $40 an acre after the railroad went through. The court properly sustained plaintiffs' objection to this question.

Evidence of the price paid by the same or another condemnor or of an award made for another property, though similar, may not be shown because not a fair indication of market value and certainly testimony of a valuation placed thereon for the condemnor is no less improper. See Simons v. Mason City & Fort Dodge R. Co., 128 Iowa 139, 150, 151, 103 N. W. 129, and citations; United States v. Foster, 8 Cir., Iowa, 131 F. 2d 3, 5, certiorari denied 318 U. S. 767, 63 S. Ct. 760, 87 L. Ed. 1138; annotation 118 A. L. R. 862, 869, 893; 18 Am. Jur., Eminent Domain, section 352; 32 C. J. S., Evidence, 448, section 593b(2); 2 Lewis on Eminent Domain, Third Ed., 1147, section 667(447); id. 1150, section 669(449).

That plaintiffs had shown on direct examination this witness had been engaged by defendant as a witness in certain other condemnation cases, without naming them, did not open the door to defendant to show on cross-examination his estimates of value given the condemnor. As bearing on this see United States v. Foster, supra, 8 Cir., Iowa, 131 F. 2d 3, 5; McCabe v. City of Chelsea, 265 Mass. 494, 163 N. E. 255.

IV. The court properly refused defendant's requested instruction 5 to the effect the law requires the owner to exercise ordinary prudence to minimize the inconveniences resulting to him from the appropriation of his land and thus protect himself from unnecessary and unreasonable damage and loss.

In Kemmerer v. Iowa State Highway Comm., supra, 214

Iowa 136, 140, 141, 241 N. W. 693, 695, we upheld the refusal of a similar requested instruction and observed "Appellee was under no legal duty to minimize his damages. The action is not of tort." See, also, as having some bearing, Moran v. Iowa State Highway Comm., 223 Iowa 936, 274 N. W. 59; Stoner v. Iowa State Highway Comm., 227 Iowa 115, 126, 287 N. W. 269.

Defendant's complaint as to the refusal of its requested instruction 6 is disposed of by Division II hereof. The request called attention to evidence we there hold was properly excluded.

█ V. Instruction 2 contains the substance of Article I, section 18, of our state Constitution that private property shall not be taken for public use without just compensation. Instruction 4 defines "just compensation" as a full indemnity or remuneration for the loss sustained by the owners and states such "constitutional requirement is not satisfied by a mere colorable compliance."

While defendant concedes these are correct abstract statements of the law, it contends there was no occasion to instruct on the constitutional requirement and that these instructions amount to a direction to be liberal in fixing the damages. When considered in connection with other instructions, particularly 5, 10, 11 and 12 on the measure of recovery, instructions 2 and 4 are not subject to such objection, nor should they tend to confuse the jury.

It was proper to inform the jury of the constitutional provision. Ball v. Keokuk & N. W. Ry. Co., 74 Iowa 132, 135, 136, 37 N. W. 110. Instruction 4 was apparently taken from 29 C. J. S., Eminent Domain, section 96. The quoted expression as to "mere colorable compliance" has the approval not only of C. J. S. but has frequently been used since the decision in Genet v. City of Brooklyn, 99 N. Y. 296, 306, 1 N. E. 777, 783. The remainder of instruction 4 is in accord with statements repeatedly made. Indeed it is frequently said "just compensation" means "the full *and perfect* equivalent" of the damages inflicted. See 18 Am. Jur., Eminent Domain, section 240; 2 Lewis on Eminent Domain, Third Ed., 1174, section 684(462).

█ VI. Defendant requested a cautionary instruction, which was refused, similar to requested instruction 9 in Welton

v. Iowa State Highway Comm., 211 Iowa 625, 636, 233 N. W. 876 (see, also, Duggan v. State, 214 Iowa 230, 242 N. W. 98), that the jury should not consider matters which are speculative, remote, imaginary or uncertain, even though testified to, and that the only elements to be considered as tending to reduce the market value are those which are appreciable and substantial and will actually lessen such value by reason of the appropriation.

While this request might well have been given, the thought it embodies is sufficiently covered in the instructions given. Instruction 10 cautioned the jury not to indulge in any speculation or vagaries as to contingent or future damages but to consider all matters shown by the evidence that will necessarily proximately affect the market value of the land by reason of the condemnation. Instruction 11 told the jury to consider appreciable and substantial facts and circumstances shown by the evidence which fairly bear upon the question of value of the land after the taking. Instruction 8 is somewhat similar to the latter part of No. 10. Instruction 12 cautioned the jury to assume the railroad will be lawfully operated, will maintain right-of-way fences and provide a reasonably adequate farm crossing and waterways for surface water through the cuts.

As bearing on our conclusion as to this assignment of error see Stoner v. Iowa State Highway Comm., 227 Iowa 115, 125, 126, 287 N. W. 269; Cory v. State, 214 Iowa 222, 226, 227, 242 N. W. 100; Kemmerer v. Iowa State Highway Comm., 214 Iowa 136, 140, 141, 241 N. W. 693.

 VII. Defendant contends instruction 11 is a recital of evidence favorable to plaintiffs. It states that in determining the fair and reasonable market value of plaintiffs' farm after the condemnation it is proper to consider the amount taken by defendant, the condition in which the farm was left and the effect of the taking upon the market value of the whole farm. In so doing it is proper to consider the inconveniences, burdens and restrictions upon the use of the farm due to the construction and operation of the railroad. Also, that in connection with such inconveniences, burdens and restrictions, the following matters are proper to consider, insofar as shown by the evidence:

the depth of the cut, the probable speed and number of trains, the difficulty and danger in crossing the railroad, the visibility of trains, restriction upon access between parts of the farm, increased number of fence rows, partial loss of use of parts of the farm, reduction in value of the improvements, rendering the farm a less desirable place to live by reason of noise, vibration, soot, cinders, smoke and dirt and by increased fire hazard and danger to children living on the farm, the increase in cost of operation of the farm, decreased rental value, separation of the buildings from the part of the farm south of the railroad and the increased cost of moving portable buildings across the railroad. The jury was cautioned not to attempt to award any separate amounts for such items but to consider them only in arriving at the fair and reasonable value of the farm after the taking.

In connection with this assigned error decisions are cited which disapprove setting out or giving undue prominence in instructions to testimony favorable to one party. See State v. Dunne, 234 Iowa 1185, 1194, 1195, 15 N. W. 2d 296, 301, and citations. When considered in connection with other instructions, No. 11 does not offend against the cited decisions.

A case like this differs from the ordinary jury case in that plaintiffs' right to recover the damage due them has been conceded throughout. The amount of such damage was the sole ultimate issue. Stoner v. Iowa State Highway Comm., 227 Iowa 115, 126, 287 N. W. 269; Millard v. Northwestern Mfg. Co., 200 Iowa 1063, 1065, 205 N. W. 979. In a sense all instructions on the measure of recovery are favorable to the party whose claim is asserted in that they inform the jury the matters to be considered in fixing the amount of the verdict against one of the litigants.

It was of course necessary and proper for the court to state the matters to be considered in arriving at the amount of recovery. All matters referred to in instruction 11, and many more, were pleaded by plaintiffs as elements of damage and there was evidence in support of them. While the instruction is perhaps somewhat longer and in more detail than usual in cases of this kind, it does not differ essentially from instructions

we have approved. See Des Moines Wet Wash Laundry v. City, 197 Iowa 1082, 1084, 1090, 198 N. W. 486, 34 A. L. R. 1517; Kemmerer v. Iowa State Highway Comm., 214 Iowa 136, 141, 241 N. W. 693, upholding a similar instruction against a like complaint; Cory v. State, 214 Iowa 222, 226, 242 N. W. 100.

Defendant also complains of instruction 11 as referring to speculative and contingent matters. The reference to danger to children living on the farm is specially criticized. Defendant itself requested an instruction calling attention to evidence tending to show inconveniences because of crossing the railroad, hazard of fire and hazards incident to the operation of trains, and the consideration to be given such testimony.

One value witness, without objection, testified the railroad would be a source of danger to children on the farm and he took that into consideration in giving his testimony. Another said, without objection, one of the things he considered was the danger to the operator of the farm and his family and that many people would not buy it because of such danger.

We are not justified in saying as a matter of law the operation of the railroad would not be a danger to children living on the farm which would tend to reduce its market value. See 18 Am. Jur., Eminent Domain, section 267; 29 C. J. S., Eminent Domain, 1040, section 169; 2 Lewis on Eminent Domain, Third Ed., 1311, section 739 (496); 2 Nichols on Eminent Domain, Second Ed., 733, 734, section 238; and, as having some bearing, Cory v. State, supra, 214 Iowa 222, 229, 230, 242 N. W. 100.

VIII. Defendant's contention plaintiff Heck was not a tenant but a partner of the owners who had no estate or interest in the land is without merit. At best it is doubtful if defendant is in position to urge this contention. The sheriff's jury made an award to Heck as tenant. Plaintiffs' petition as amended alleged and defendant's answer expressly admitted Heck was a tenant. Throughout plaintiffs' testimony Heck was referred to, without objection, as a tenant and his interest a leasehold. It was not until plaintiffs rested their case that defendant asked and was granted leave to amend its answer "to conform to the proof." On the day the testimony was concluded this amendment was filed, raising for the first time the issue Heck was not a tenant but a partner. At least until this

amendment was filed there was no issue as to the tenancy of Heck. Wilson v. Oxborrow, 220 Iowa 1135, 1142, 264 N. W. 1, and citations.

But aside from the above, the court correctly ruled Heck was a tenant. He occupied the farm under "a verbal stock share lease." The owners furnished the land and paid the taxes. Heck furnished the labor, machinery and horses. Each furnished half the seed and tractor fuel. Each owned half the livestock to which the grain was fed. Occasionally it was necessary to buy additional feed on a "50-50" basis. The proceeds from sale of the livestock were equally divided.

This arrangement differed from the familiar grain share lease principally in that the grain was fed to cattle and hogs (most of which were bred and raised on the farm) that were later sold and the proceeds divided. Had the grain or proceeds thereof been divided there could be no contention there was a partnership. The mere feeding of the grain and division of the proceeds from sale of the livestock did not transform a farm tenancy into a partnership.

Courts are reluctant to construe an arrangement such as this between a farm owner and occupant as a partnership unless such relation is clearly shown. There is no such showing here. Florence v. Fox, 193 Iowa 1174, 1177–1179, 188 N. W. 966, and citations; Johnson v. Watland, 208 Iowa 1370, 1372, 227 N. W. 410, and citations; annotation 131 A. L. R. 508, 516, stating an agreement for sharing the proceeds of farm produce in lieu of rent will not of itself create a partnership; 51 C. J. S., Landlord and Tenant, 514, section 6b.

In Covell v. Johnsen, Iowa, 196 N. W. 987, cited by defendant, both parties evidently conceded there was a partnership and there was no issue as to its existence.

IX. Instruction 10 states the damage due plaintiff owners is the difference between the fair and reasonable market value of the farm immediately before the condemnation and such value immediately thereafter without reference to any benefits from the appropriation. The damage due Heck is said in instructions 10 and 14 to be the difference between the fair and reasonable market value of his leasehold immediately be-

fore the condemnation and such value immediately thereafter without reference to any benefits. The court refused defendant's eleventh requested instruction to the effect the jury should first determine the damage to the whole farm as a unit and apportion therefrom the damage due Heck.

Defendant excepted to the instructions given and the refusal of its eleventh request as erroneous in failing to require the determination of the damages to the farm as a whole and the apportionment therefrom of the damage due Heck. The true rule is said to be that the damage should be apportioned to those having interests or estates in the land and the combined damages cannot be greater than if the owners had not leased the land.

The question is thus presented whether the damage due the owners and that due the tenant may be separately assessed as was done here or must the combined damage, limited to such amount as would be allowed if there were no separate interests, be apportioned between them. The latter method has the support of the weight of authority in other jurisdictions. But the authorities recognize this method is not always followed and any one rule is difficult of general application.

The question is considered at some length in State v. Platte Valley Public Power & Irrig. Dist. (Simmons, C. J.), 147 Neb. 289, 23 N. W. 2d 300, 166 A. L. R. 1196, and annotation 1211, where it was held the damage to the owner and lessee might be separately assessed and the condemnor was required to pay the sum of such damages even though in excess of the damage to the undivided whole interest. It was there pointed out such method correctly awards compensation to each "owner" for what he has lost, and the other rule, for which defendant contends here, improperly fixes the measure at what the taker has gained. This recent opinion appeals to us and we are disposed to follow it, especially in view of our own decisions. The authorities are cited in the opinion and the A. L. R. annotation following it and need not be repeated here.

While the question defendant raises has never been squarely decided by us, at least no decision of ours is authority for its contention. And we have intimated it is proper to value separately different estates or interests taken by eminent domain.

In Simons v. Mason City & Fort Dodge R. Co., 128 Iowa 139, 142, 143, 103 N. W. 129, 131, both owner and tenant of a farm appealed from condemnation awards. The condemnor asked that the two appeals be consolidated for trial "to the end that a single joint award might be made." We held:

"The interests of these parties were not joint, but several. One was the owner of the fee and the other had a leasehold interest, and an award to one would in no manner affect or prejudice the other's rights. There was no error in the ruling on the motion to consolidate."

To adopt defendant's contention would require us to overrule this holding. In the tenant's case, Werthman v. Mason City & Fort Dodge R. Co., 128 Iowa 135, 138, 103 N. W. 135, 136, it is said:

"The rule in this State, where a lessee seeks compensation for property taken for public uses, is to allow him the difference between the value of the annual use of the premises before the taking of the right of way and what it was worth afterward. Renwick v. R. R. Co., 49 Iowa [664], 672."

See, also, Des Moines Wet Wash Laundry v. City, 197 Iowa 1082, 1085, 198 N. W. 486, 34 A. L. R. 1517; Chiesa & Co. v. City of Des Moines, 158 Iowa 343, 138 N. W. 922, 48 L. R. A., N. S., 899.

In connection with this assigned error, defendant contends the court's instructions permitted double recovery for the damage to Heck's interest—once to the owners who were allowed the damage to the farm, and again to Heck who was permitted to recover the damage to his leasehold. But we think this does not follow. Instruction 11 on the measure of the owners' recovery cautions the jury to keep in mind the land was owned subject to the lease with Heck. There is no reason to doubt that the jury abided by this admonition. Further, instruction 14 directs that in fixing the owners' damage no consideration be given the destruction of the crops on the right of way as such. In view of these instructions it is not apparent the separate awards were in excess of the damages that would have been allowed under the method for which defendant contends.

Further, the parties seem to have proceeded until the close of the evidence upon the trial as if plaintiffs were entitled to have the damage due the owners and that due Heck separately assessed. Separate condemnation awards were made. Plaintiffs' petition claimed separate damages to the owners and to the tenant. No attack was made thereon. Throughout the trial value witnesses testified without objection to the difference in value of the farm and the difference in value of the leasehold, before and after the condemnation, apparently without regard to what the total damage would have been if there had been no leasehold interest. If such method of evaluating the damage was not to be followed, it would seem the question should have been raised before the time to instruct the jury.

X. Finally, defendant asserts the allowance to plaintiffs' attorneys is excessive. The right to reasonable compensation under section 472.33, Code, 1946, is apparently not challenged.

██ ██ Plaintiffs' motion for taxation of attorney fees contains itemized statements of the services of their two attorneys. One attorney said he spent 27¾ days in preparation, the other 29½ days, for which each charged $50 per day. For the eight days of trial each attorney asked $100 a day. The statements total $4,462.50. Defendant's resistance to the motion alleged the amounts claimed are excessive. The presiding judge, after hearing arguments on the motion but without hearing evidence, allowed $3,000, somewhat less than seventy per cent of the amount claimed.

The court was not required to hear testimony on the motion. However, neither party was denied the privilege of offering evidence. The matter was within its discretion. Hall v. Wabash R. Co., 133 Iowa 714, 717, 110 N. W. 1039. We are not prepared to hold the allowance was excessive. The case was important. A number of difficult law questions were involved. Considerable preparation was required. Plaintiffs' attorneys were opposed by counsel of much ability. The results obtained were satisfactory.

██ The decreased purchasing power of money may properly be considered in fixing attorneys' fees. Annotation 143 A. L. R. 672, 721, which discusses the different matters to be considered in fixing compensation of attorneys. See, also, Kelly,

Shuttleworth & McManus v. Central Nat. Bk. & Tr. Co., 217 Iowa 725, 736, 248 N. W. 9, 250 N. W. 171; Graham v. Dubuque Specialty Machine Works, 138 Iowa 456, 463, 114 N. W. 619, 15 L. R. A., N. S., 729.—Affirmed.

MULRONEY, C. J., and OLIVER, HALE, MANTZ, SMITH, and HAYS, JJ., concur.