## THE STATE OF IOWA v. SHEELEY.

1. ILLEGAL VOTING: KNOWLEDGE. In the trial of an indictment under § 4337 of the Revision of 1860, for "willfully voting when not a citizen of the United States" the Court did not err in refusing to instruct the jury "that knowledge is not to be presumed in such case, but is to be alleged and proved like any other fact," for the reason that the instruction was not pertinent.

2. DUPLICATE INSTRUCTION. It is not error for a court to refuse to give an instruction on the motion of a party when it has already been substantially given in the charge of the court.

3. CHALLENGE TO JUROR. That a juror has served on a trial jury which convicted another defendant for an offense similar to the one charged in the indictment, is not a good cause of challenge under § 4771 of the Revision of 1860. This cause of challenge applies only to cases in which two or more persons have been jointly indicted for the same offense, and have severed in their trials; and not to causes in which the offense is necessarily single and cannot be committed jointly with another.

4. ILLEGAL VOTING: EVIDENCE. In the trial of an indictment under § 4337 of the Revision of 1860, for "willfully voting when not a citizen of the United States," evidence that the witness consulted "friends" as to his right to vote, "and was advised by them that such right existed" is inadmissible. It seems that evidence that the defendant had consulted persons learned in the law and that upon being informed of all the facts

they advised him that he was a legal voter, should be admitted as tending to disprove a criminal intent; but such evidence would not be conclusive.

*Appeal from Delaware District Court.*

MONDAY, DECEMBER 21.

THE defendant was indicted for voting illegally, was convicted and appeals. The facts necessary to an understanding of the questions determined, appear in the opinion of the Court.

*Thomas S. Wilson* for the appellant, cited *The Commonwealth* v. *Aglan*, Thatcher's Cr. C., 412; 9 Met., 270; *The Commonwealth* v. *Wallace*, Thatcher's Cr. C., 596.

*C. C. Nourse*, Attorney-General, for the State, cited *The State* v. *Boyett*, 10 Ind., 336; *McGuire* v. *The State*, 7 Humph., 54; *Morris* v. *The State*, 7 Blackf., 607.

LOWE, J. — Under § 4337 of the Revision of 1860 the defendant was indicted and convicted of illegal voting. It is claimed that the Court below erred: *First.* In its charge to the jury; *Second.* In refusing the instructions asked for by the defendant; *Third.* In overruling the objection of the defendant to the juror James McClure; *Fourth.* In excluding the testimony of the witness Michael Sheeley.

In argument the first of these assignments is not pressed; indeed, the charge of the Court is liberal to, not to say quite favorable for, the defense. The Court did refuse the following instructions asked for by the defendant: 1. Knowledge is not to be presumed in such cases, but is to be alleged and proved like any other fact; 2. If a foreigner honestly believes, at the time of voting, that he has a right to vote, he is entitled to an acquittal.

In the Criminal Code (ch. 171, Rev. of 1860) there are several kinds of illegal voting specified and defined in as

many distinct sections thereof. Section 4335 makes it an offense, "if any person, knowing himself not to be qualified, vote at any election authorized by law," &c.

The first of the above instructions, we apprehend, was intended to apply to a charge or indictment under this section. But the defendant was indicted under section 4337, for willfully voting when not a citizen of the United States. We discover no pertinency of the instruction in question to the case at bar.

The second of the above instructions seems to have been very fairly covered by the charge of the Court to the jury. For instance, the jury was told, in substance, that if the defendant believed and showed that he had any just cause to believe that he had a right to do a given act, and that he did it under the impression that such was his right, then he would show the absence of any wrong intention. With this charge given to the jury, it is difficult to understand how the defendant was prejudiced by withholding the last instruction under review.

The objection made to the juror McClure was, that he had been one of a panel which had convicted another defendant of a similar offense. Section 4771 of the Revision enumerates the several causes for which a challenge may be made for an implied bias. Among them is specified the serving on a trial jury which had tried another defendant for the offense charged in the indictment. This evidently refers to cases where two or more have been jointly indicted for the same offense, and have severed in their trial, and not to that class of cases where the offense is personal, or rather single, and cannot be jointly committed, such as illegal voting. It seems from the facts disclosed that one Michael Sheeley had been found guilty also of illegal voting, in which finding said McClure had taken part as juror. Whether it was of the same kind or description of illegal voting for which the defendant in this case was indicted,

does not appear.   However this may be, it is evident that he was convicted for his own misdemeanor, and not for the offense charged in this indictment.

Lastly, it was proposed to prove by the witness, Michael Sheeley, on the trial, that the defendant had resided in the United States fifteen years, and four years in the State of Iowa, and two years or more in the township where he voted; that he was under the impression that he had a right to vote for township officers; that at the time of voting he consulted the witness and other friends as to his right to do so, and was advised by them that such right existed, whereupon he voted for a justice of the peace, which was the only officer for whom he had voted.   The admissibility of this evidence is urged as tending to show the *animus* with which the defendant had cast his vote, whether willfully corrupt, being conscious of his alienage, and therefore his want of citizenship and qualification, or innocently, ignorant of his rights in the premises, and acting only in accordance with the advice of friends.   But we reply there are several things under the laws of this State requisite to constitute a qualified elector, and as a general rule, every voter is presumed to know what these are.   If he does not, it is his duty, if he desires to exercise the elective franchise, to inform himself by an appeal to the law itself or to those whose business it is to expound the law or give legal advice.   He should not be held· excused in taking counsel from those no better informed than himself.   If such a rule should obtain, it is plain to see that the purity of the ballot box could not be preserved, and the penalties of the law for illegal voting would be no protection, for the evasion thereof would be within the ready reach of any evil disposed voter.   Nevertheless, it is conceded that nice and important questions, involving both law and fact, sometimes arise in regard to the qualifications of an elector to vote, as in the case of *Commonwealth* v.

*Bradford,* 9 Metc., 268. There the question was one of domicile. The voter had submitted the facts of his case to one or more counsel, as to his right to vote, and had acted upon their advice. Proof of these facts were held admissible, as tending to negative the knowledge which constituted the gist of the offense under the Massachusetts statute, to wit, *"willfully voting, knowing himself not to be a qualified voter."* To convict under this law, it was held necessary to prove, not only that the accused had no right to vote, but that he knew it. The same necessity might exist in order to convict under section 4335 of our Code. But the present defendant was indicted under section 4337, where the gist of the offense consisted in the willfull or corrupt intent to vote, not being a citizen of the United States. Now, it is possible that a doubtful question might arise in regard to the fact of citizenship, and that in such case it would not be improper for the voter to take advice, and if, under the information he had obtained, he cast his vote, evidence of such facts might be offered to disprove, or as tending to disprove, any unlawful or criminal intent. But admitting this, still it will not do to establish the rule contemplated by the introduction of the above testimony, of allowing the voter to consult any one, whether skilled and experienced or not, whether a professional man or not. To do so, and allow such conduct to justify or excuse a violation of the election laws, would end in the subversion of all penal animadversion for such offenses. We do not feel authorized, therefore, in going any further than the Court did in the case of the *Commonwealth* v. *Bradford, supra;* and even in such case the evidence should not be conclusive, but received subject to be controlled by higher and more satisfactory proofs, that may be offered on the part of the prosecution, as was also held in the case referred to. Upon the whole, we feel constrained to affirm the

decision below, with directions that the sentence there pronounced be duly executed.

Affirmed.