## Commonwealth *v.* Weiserth, Appellant.

*Election law—Inspectors—Rejection of voter—Impersonation.*

1. The inspector of an election may be convicted under the Act of July 2, 1839, P. L. 519, on an indictment charging him with having "unlawfully, willfully, and knowingly" rejected the vote of a qualified citizen, where the proof shows that he knew that the citizen was qualified, but had rejected his vote because an impostor had previously voted under the citizen's name; and it is immaterial that the inspector may have acted in good faith, after deliberation, and consultation with others, and in the exercise of what he deemed his best judgment.

2. A citizen duly qualified to vote cannot be deprived of his right to vote, by the act of an impostor.

Argued May 10, 1911. Appeal, No. 65, Oct. T., 1911, by defendant, from judgment of Q. S. Phila. Co., Dec. T., 1910, No. 397, on verdict of guilty in case of Commonwealth v. Harry S. Weiserth. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Indictment for violation of the election laws. Before STAPLES, P. J., specially presiding.

The opinion of the Superior Court states the facts.

Verdict of guilty upon which the defendant was sentenced to pay a fine of $50.00.

*Errors assigned* were various instructions.

*Harry A. Mackey,* for appellants, cited: Com. v. Sheriff, 1 Brewster 183.

*Joseph H. Taulane,* assistant district attorney, with him *Samuel P. Rotan,* district attorney, for appellee, cited: People v. Doe, 109 N. Y. App. Div. 670, (96 N. Y. Supp. 389); People v. Brooks, 1 Denio (N. Y.) 457; Coates v. Wallace, 17 S. & R. 75; Wilson v. Barrett, 24 Pa. Superior Ct. 68; Com. v. Scott, 38 Pa. Superior Ct. 303; Com. v. Kloss, 38 Pa. Superior Ct. 307; McDonough's Election, 105 Pa. 488; Com. v. Lee, 1 Brewster 273; Com. v. Long, 1 Del. County 50; State v. Bush, 45 Kansas, 138 (25 Pac. Repr. 614); U. S. v. Anthony, 11 Blatchford (U. S.) 200; Gandy v. State, 82 Alabama, 61 (2 So. Repr. 465); McGuire v. State, 26 Tenn. 54.

OPINION BY RICE, P. J., July 13, 1911:

Harry S. Weiserth and H. W. Burton were the inspectors, and Richard W. Scull was the judge of election, in a certain district of the city of Philadelphia, at the general election held on November 8, 1910. The former two were convicted upon an indictment containing six counts, in each of which they were charged with having "unlawfully, willfully, and knowingly" rejected the vote of a qualified citizen and elector of the election district, who was qualified and entitled to vote in that district, at the election being held, they knowing that he was so qualified and entitled. Scull was convicted upon a separate indictment charging the same offense. The cases were tried together, and each defendant took a separate appeal. The appeals of the inspectors may be considered together, but that of Scull raises a different question and will be discussed separately.

It is undisputed that the citizens whose votes were rejected were qualified electors of the district, and, but for the fact that earlier in the day imposters had voted on their names, would have been entitled to vote at the election. One of the points submitted by the defendants was as follows: "There is no statute compelling the defendants to furnish the second ballot to a voter, when the records showed that the name had already been voted upon with-

out challenge or objection." This position is obviously untenable. The constitution of 1874, as amended in 1901, declares that every male citizen of twenty-one years of age, possessing certain qualifications, "shall be entitled to vote at all elections, subject, however, to such laws requiring and regulating the registration of electors as the general assembly may enact." In the same connection, reference should be made to sec. 17 of the Act of February 17, 1906, P. L. 49, as amended by the Act of June 3, 1907, P. L. 395, 416, which reads: "Any person whose name is on the register shall be entitled to vote at any general, special, primary, or municipal election, unless it shall be shown to the satisfaction of the election officers that he has become disqualified since registration: . . . . Before receiving his ballot every voter shall satisfy the election officers of his identity, and, if challenged, by signing his name in the place provided for that purpose, if able to do so, and by the production of such other evidence as is or may be required by law." A citizen who possesses the qualifications named in the constitution, is duly registered, has not become disqualified since registration, satisfies the election officers of his identity, and, if challenged, complies with the concluding provisions of sec. 17 of the act of 1907, cannot lawfully be deprived of his right to vote, by the act of an imposter. And it makes no difference whether the election officers have received the vote of the imposter in good faith or fraudulently. The right of the qualified elector remains unimpaired. This is so plain as to admit of no argument.

But it is inquired—we adopt the words of the learned counsel for the appellants—"whether or not they are guilty of a violation of the terms of any act of assembly, because, having been once imposed upon by an impersonator by receiving the vote as that of a qualified elector, were they compelled afterwards to furnish the real voter with a ballot, and, after exercising their best judgment and believing that under the law they had no right to do so, can they be adjudged guilty of refusing to furnish a ballot

to a duly qualified elector?" Again, counsel says: "For the purposes of the argument let it be frankly admitted that these election officers in six instances became convinced that they had been imposed upon and that they had furnished ballots to six people who had no right to them and that the six bona fide voters had applied for ballots; that these two inspectors argued the question among themselves, solicited outside advice, hesitated a long time before making a decision and finally, in the exercise of their best judgment and the best light that they could have thrown upon the law on the subject they believed that they had no right to give out the second ballot, for they knew of no direct expression of an act of assembly which under such circumstances compelled them to do it, but, on the other hand, they were fully aware that the moment they made a return to the return board of judges of more votes being in the box than there were names voted upon, they immediately made themselves guilty of an apparent and palpable fraud." We repeat that none of the inconveniences that would arise from permitting the qualified electors to vote could be a legal reason for denying them their right. By no sort of reasoning can the act be construed as introducing the additional condition or qualification to the exercise of their right, that no other persons have impersonated them and received and cast ballots in their names. The question, then, comes down to this, Would the election officers be excused if, in the exercise of their best judgment, they believed otherwise? The words of the statute, defining the offense of which they were convicted, are, "shall, knowingly, reject the vote of any qualified citizen," and the penalty is a fine of not less than fifty nor more than $200: Sec. 103, Act of July 2, 1839, P. L. 519. It is to be observed that, by the immediately preceding section, "any willful fraud in the discharge of his duties" is punishable by imprisonment of not less than three nor more than twelve months, and by a fine of not less than $100 nor more than $500, and by disablement for seven years from

holding any office of honor, trust, or profit in the commonwealth, and from giving his vote at any general or special election therein. Reading the two sections together, it becomes clearly apparent that the legislature did not intend to make fraudulent intent or corrupt motive an ingredient of the lesser offense defined in sec. 103. Hence, the court committed no error in instructing the jury that "knowingly" was the essential word in the clause of the indictment charging that the defendants "unlawfully, knowingly, and willfully" rejected, etc. That the act charged was contrary to the statute, was sufficiently averred in the indictment, and that it was done willfully, that is, intentionally, is implied in the averment that it was done knowingly. Of course, the legislature meant, not merely that the act of rejection must be performed knowingly, but that it was performed with knowledge of the facts that made it unlawful. Counsel for the commonwealth concede that if any question arises concerning a voter's qualifications, an election officer is entitled to exercise his best judgment in determining it, and if he makes an honest mistake he cannot be held responsible. But in the same connection, they contend that the moment it is conceded or admitted that a voter is qualified, and then an election officer rejects his vote, he does so knowingly. This we believe to be the correct view. It distinguishes properly between an honest mistake of facts which enter into the question of the voter's right, and a flagrant disregard of the plain and unambiguous provision of the statute applicable to the known facts. In the present case, it is apparent from the statement of counsel for the appellants as to the real question for decision, and it is apparent, also, from the testimony, that the appellants did not reject the votes of these electors because of any doubt they entertained as to their identity or as to their qualifications, but because they concluded that the law did not permit them to give a ballot to a qualified elector, duly registered, and to permit him to cast it, where they had been imposed upon previously and had permitted the

imposter to vote on his name.  To accept this as a valid excuse for knowingly rejecting the vote of a qualified citizen, would be violative of the general principle that such officers are presumed to know the law and are bound to conform their action to it.  It is no answer to say that they did not intend to violate the law.  When the commission of an act is made a crime by statute, without any express reference to any intent, then the only criminal intent necessarily involved in the commission of the offense is the intent to commit the interdicted act: State . v. Bush, 45 Kan. 138; Com. v. Weiss, 139 Pa. 247.  The law is well illustrated in McGuire v. State, 26 Tenn. 54, where the defendant was convicted of voting without completing his naturalization, his contention being that he honestly believed he had a right to vote.  In discussing the question of the effect of this belief upon the liability of the accused, under a statute that provided that "any person who shall knowingly vote at any election, not being at the time a qualified voter in the county in which he so votes, shall be guilty of a misdemeanor," the court said: "But if we go so far as to abandon the literal and grammatical construction and conjecture that the word 'knowingly,' in the mind of the legislature had some reference to the qualifications of the voter, we deem it safest to suppose, as well as most probable, that they did not intend to violate a fundamental principle of the criminal law, but to provide, that if the party voting know the existence of a state of facts, which disqualify him in point of law (and that law he is held not to be ignorant of) then he shall be guilty of a misdemeanor.  If the voter believe himself to be twenty-one years of age, when he is not, and vote, he does not know the existence of the disqualifying fact, and may, on that ground be excused.  But if he know that he is only twenty years of age, yet believes he is old enough, in point of law, to vote, such ignorance of the law will not excuse him.  If the voter honestly believe that he has resided six months in the county before the election, and the fact turn out otherwise, he may

be excused. But if he know that he has been only four months in the county before the election, yet he believes that to reside four months is, in point of law residence enough, he shall not be excused." So, in the case of United States v. Anthony, 11 Blatch. 200, where Susan B. Anthony was indicted and convicted for voting, knowing she was not qualified, Mr. Justice HUNT of the supreme court, sitting at circuit, said: "The precise question now before me has been several times decided, viz., that one illegally voting was bound and was presumed to know the law, and that a belief that he had a right to vote gave no defense if there was no mistake of fact: Hamilton v. People, 57 Barb. 625; State v. Boyett, 10 Ired. 336; State v. Hart, 6 Jones (N. C.), 389; McGuire v. State, 26 Tenn. 54; State v. Sheeley, 15 Iowa, 404. No system of criminal jurisprudence can be sustained upon any other principle." We do not say that these and other cases relating to the criminality of the act of a voter are entirely analogous to the case at bar. The duties of inspectors of election are in some particulars judicial in their nature, and to construe the statute so strictly against them as to make them liable criminally for every mistake of judgment in the performance of duties of that nature, would make honest men hesitate to accept the office. We can conceive of cases where an honest and careful officer might reject the vote of a qualified citizen, through mistake of judgment, which would involve more than mere mistake of fact. Com. v. Sheriff, 1 Brewst. 183; s. c., 7 Phila. 84, would seem to be such a case. We are not willing to say that in every such case the officer would be criminally liable. But where the rejection of the vote that ought to be received rests on no mistake of fact, on no error of judgment in determining whether the voter possesses the requisite qualifications, but upon a fact which has no possible relation to the question, the officer cannot excuse himself by saying that he believed that fact to be sufficient justification for an act which, without such belief, would be criminal. When a person demands the

right to vote in localities where the personal registration law applies, and he is not challenged, the duties of the inspectors pertain to the inquiries, first, whether his name appears upon the register; second, whether he is the identical person registered; third, whether he has become disqualified since registration. The rejection of a vote through an honest mistake in determining the facts involved in those inquiries, would not be a criminal act within the true intent and meaning of sec. 103 of the act of 1839. But if the person offering to vote has all the requisite qualifications, satisfies the inspectors that he is the identical person whose name appears upon the register, has not become disqualified since registration, and, if challenged, offers to sign his name in the place provided for the purpose, the refusal to give him a ballot and to permit him to cast it because, and only because, the inspectors believe that the fact that they have given a ballot to an imposter and permitted him to cast it, debars them from giving a ballot to the rightful and duly registered elector, cannot be regarded as resulting from a mere mistake of judgment which excuses him. This construction will not subject to punishment election officers who give the care and attention of ordinarily prudent persons to the performance of the duties they have sworn to perform; while the opposite construction would seriously impair, if not wholly destroy, the efficiency of sec. 103 of the act of 1839, and would open wide the door to election fraud of an odious nature. A careful examination of the charge of the learned trial judge, in the light of the evidence, has led us all to the conclusion that he submitted the case to the jury upon the correct principle, and that, in expressing his opinion upon questions of fact which were for the determination of the jury, he did not so far invade their province as to justify a reversal: Com. v. Scott, 38 Pa. Superior Ct. 303.

All the assignments are overruled and the judgment is affirmed.