H. J. SCHOONOVER et ux., Appellees, v. JOSEPH B. FLEMING et al., Trustees, Appellants.

No. 47162.

(Reported in 32 N. W. 2d 99)

April 6, 1948.

Richard A. Stewart, of Washington, and R. L. Read and A. B. Howland, both of Des Moines, for appellants.

Baldrige & Bailey, of Washington, for appellees.

HALE, J.—The land involved in this proceeding consists of about 159 acres, containing two tracts of nearly 80 acres each—one running north and south and the other running east and west, cornering at the northwest corner of the lower tract, and other land. The whole tract is described as follows:

"The West Half of the Northwest Quarter, the Northeast Quarter of the Southwest Quarter, the Northwest Quarter of the Southeast Quarter and one acre in the Southwest Corner of the East Half of the Northwest Quarter and a strip of land twenty feet in width off the north end of the East Half of the Southeast Quarter all of the above being in Section 4, Township 74 North, Range 7 West of the 5th P. M. Also Lots 5 and 6 in Auditor's Subdivision of the Northeast Quarter of Section 5, Township 74 North, Range 7 West of the 5th P. M."

The right of way enters the east line of the north 80, varies in width from 200 feet at the point of entrance, then widens to 250 feet, and at the depot grounds is 425 feet wide, and leaves the north 80 tract at or near the southwest corner of said tract, extending approximately in a northeast-southwest line. In all, the land taken through the north 80, and immediately below the place where the buildings are located on the west line of said 80, amounts to 12.7 acres.

The plaintiffs have owned the farm above described since 1940, but were tenants on the farm for several years prior to that time. The farm buildings were all located near the south end of the north tract, the residence being a two-story farm home in good condition. To the west of the farm is a rock-surfaced road running north to the north line of the land appropriated, thence northwest. The other buildings are two barns, corn and oat bins, a 50-foot silo, cow sheds, and other farm buildings. The farm itself varies in different parts in the quality of soil and other respects, there being in cultivation about 58 to 60 acres in different fields. It is crossed by a creek running through it irregularly from the north part of the west line through both eighties, and passing out of the farm not far from the southeast corner of the south 80 acres. There is a good well on the farm near the farm buildings. The farm, while not well adapted for the cultivation of crops, was adapted for and used as a dairy farm. All the buildings were in good condition at the time of trial.

The stream through the land has overflowed at various times. While some parts of the farm are level, others are rough. In a general way it may be said that a little over a third of the land may be considered as suitable for growing crops.

In the construction of the railroad through the Schoonover land there was a cattle pass 66 feet long with approaches erected by the railroad company about 200 feet west of a former roadway which had been used in passing from the north end of the farm to the south end. Stock can thus pass to and from the barn lots and the pasture in the south 80 acres without opening gates. In moving the farm equipment back and forth between the land on the north side of the railroad track and that on the south side it is necessary to go

out on the graveled Wayland road, an additional distance of 500 or 600 feet of travel. It is not claimed that the equipment can be transferred from the north and south sides of the land through the cattle pass. The price of the land when bought in 1940 was $8,000, all of which was borrowed.

There was evidence to the effect that the purchase was at a favorable figure to the purchaser, and that it was, at the least, a bargain at the price at that time. However this may be, a fair valuation in 1940 would be much less than the market value at the time of condemnation. In fact the defendants say, in argument:

"We concede, of course, that appellees are entitled to the benefit of the bargain which they made when the land was purchased, and that between the date of purchase in 1940 and the condemnation date of June 26, 1946, there was a very substantial increase in market value of farm lands, generally."

The dispute was as to the amount of damage. It was conceded that the plaintiffs were entitled to damages, but the parties were unable to agree as to the amount. Testimony of witnesses as to value was offered on both sides, and of course varied considerably as to the amount. Plaintiffs' five value witnesses, while not agreeing in all respects as to value, on the average, fixed the value per acre before condemnation at $130, and after condemnation on the average at $61 per acre, making the average of total value before condemnation $20,670, and after condemnation $8,920. The average of their testimony therefore as to the amount of damage to the farm as a whole was $11,750.

The testimony of defendants' witnesses of course fixed the damage at a great deal smaller figure. The jury returned a verdict fixing the damage at $8,795, which was less than that awarded by the sheriff's jury in condemnation.

I. The first error relied upon by the defendants for reversal is that the court erred in overruling defendants' motion for a new trial because the verdict returned by the jury was so grossly excessive as to indicate passion and prejudice to the defendants on the part of the jury. We cannot agree with this contention of defendants.

The jury had before it all the facts—the evidence as to the taking by the defendants of 12.7 acres of what was probably the best crop land on the farm. The crossing of the farm at about the middle point by a railroad line would reduce the market price. There were irregular tracts both north and south of the line of the right of way which made cultivation more difficult. The improvements were not as accessible to all parts of the farm, and in moving from the north to the south part of the farm especially there was extra labor in transferring the equipment. There were the ordinary inconveniences in such cases from noise, cinders, smoke and dirt, and possible injury to persons, with all the other inconveniences and dangers incident to the close proximity of the railroad track and the separation of the tracts of the farm. All these questions of damage, and the extent thereof, were for consideration by the jury, with the consideration that they were there for all time. To some possible buyers some of the elements of damage would not be of great importance. By others, they would be considered greatly more detrimental. Thus, the question of market value must necessarily vary in the minds of many people. In the consideration of the question of damages we find nothing in the record that would indicate passion or prejudice. The final decision in all these cases must be for the jury. We cannot agree with the defendants that the size of the verdict in this case is indicative of passion and prejudice; that it is so far out of line as to so appear. The amount found as damages was well within the testimony of the witnesses. It is not the office of this court to determine the amount of the damage where, as in this case, it is fully supported by testimony of competent witnesses, and of course we cannot measure the fairness of the verdict by an amount per acre of the jury's verdict. The inconvenience and damage to the land as a whole, and therefore to the market value, is the criterion, and this of course is the office of the jury.

Plaintiffs argue, and we think correctly, that where the evidence is in conflict and the verdict has ample support in the evidence, it is not proper for the appellate court to reweigh the evidence and substitute its opinion of values for the determination of the jury. Plaintiffs cite Cutler v. State, 224

Iowa 686, 278 N. W. 327, and cases cited therein; Cory v. State, 214 Iowa 222, 242 N. W. 100. See, also, Kukkuk v. City of Des Moines, 193 Iowa 444, 187 N. W. 209; Stoner v. Iowa State Highway Comm., 227 Iowa 115, 287 N. W. 269; Besco v. Mahaska County, 200 Iowa 684, 205 N. W. 459; Kosters v. Sioux County, 195 Iowa 214, 191 N. W. 993; Darst v. Fort Dodge, D. M. & So. Ry. Co., 194 Iowa 1145, 191 N. W. 288; Kemmerer v. Iowa State Highway Comm., 214 Iowa 136, 241 N. W. 693. The foregoing cases, with others cited by the plaintiffs, support their argument.

On the other hand the following cases are cited by the defendants: Campbell v. Iowa State Highway Comm., 222 Iowa 544, 269 N. W. 20, a case for a condemnation of a highway in which there could be little doubt that the verdict was excessive; Jenkins v. State Highway Comm., 208 Iowa 620, 224 N. W. 66, in which the amount also appears to be excessive; Luthi v. Iowa State Highway Comm., 224 Iowa 678, 276 N. W. 586, as to this case we have no doubt as to the excessiveness of the verdict. But, as the plaintiffs argue, the comparison of the verdict in question with the verdicts of other cases, decided in other localities under different conditions and at different times, to determine whether the verdict is excessive or not, is not only improper but of little value for the reason that it is difficult, if not impossible, to have two cases of condemnation in which the elements of damage or the conditions are identical. We see no grounds upon which we could hold that the award was so excessive as to show prejudice or passion on the part of the jury.

II. Defendants allege that the court erred in commenting upon the weight of the evidence while ruling upon objections to the cross-examination of the witness C. V. Crull, which comments were of such nature as to clearly indicate to the jury the opinion of the court that the cross-examination was improper, of no weight, and should be disregarded. The first part of the record on which defendants have based their objection was when the question by defendants' counsel was asked as follows:

"Q. Do you think that the necessity of crossing a rail-

road track at grade increases or diminishes the damage from the location of the railroad across the farm?

"Mr. Baldrige: Same objection.

"The Court: Overruled. He may answer. I think that is a question of common knowledge."

The next is where, for some reason not shown in the evidence, there was laughter in the courtroom and defendants' counsel caused the record to show that counsel for the plaintiffs and the court were indulging in laughter:

"Mr. Baldrige: For proper justification.

"Mr. Howland: And we desire to except. Now, may we have a ruling please on the part of the court?

"The Court: He can answer if he can. Read the question. I wasn't laughing at you."

Counsel calls attention further to other parts of the record of which we set out what appears to be the part objected to:

"Q. Isn't it a fact that you valued that 80-acre unimproved parcel of real estate about 50 per cent of which could be tilled and cultivated at $55 per acre before the railroad went through in June 1946?

"Mr. Baldrige: Now, this is objected to as appearing wholly immaterial and irrelevant because it is not apparently directed toward a market value of the land but merely— market value of the land in question, but merely is a collateral issue as to damages to some other place, some other farm.

"The Court: Yes, I think you are getting a good ways away from this trial. The Court has some discretion on cross-examination.

"Mr. Howland: I think the Court does, but if the objection is sustained I would like to be heard in argument unless your mind is made up, if your Honor please. I don't really want to try this case again and I hope I don't have to.

"The Court: Well, let him answer, but I think you are getting a long ways away."

The record in the only other incident which occurred, as set out by defendants in their argument, is as follows:

"Q. Is it not true that after the railroad went through you appraised the same 80-acre piece at $40 per acre?

"Mr. Baldrige: Same objection.

"The Court: If he don't know he can't testify.

"Mr. Howland: Has he answered?

"The Court: I thought he answered. What is the answer?

"The Witness: I hadn't answered that last question yet.

"Mr. Baldrige: Did the Court rule on that?

"The Court: Overruled. He may answer."

We have examined the arguments of counsel and the record of the trial, as well as the authorities cited by the defendants. We do not discover anything in the record which would indicate that the court overstepped the bounds of fairness and proper judicial conduct. We are not able to see how any prejudice could arise from the remarks, which appear to us to be harmless. In the trial of cases to a jury it is of course improper for the court to indicate in any way its feeling or opinion as to the facts in the case, but the·record, of which we have tried to show the principal points of objection, is clear of any such appearance.

III. Defendants except to the ruling of the court and claim as error its refusal to sustain a challenge for cause to the juror Harry Taylor who served in the S. W. Korf case against the same condemnors at the same term of court. Korf v. Fleming, 239 Iowa 501, 32 N. W. 2d 85. The plaintiffs allege that the case involved condemnation of a railroad right of way by defendants through another farm of 140 acres and the issues there presented were identical with the issues in the case at bar.

We may say, at the outset, that the Korf case, which has been argued, both orally and in the printed record before this court, does not present the same issues as are present in the instant case. The questions of the rights of the landlord and tenant entered into that case, but are not present here, and the properties are separate and distinct from the property involved herein.

Defendants cite Rules of Civil Procedure, Rule 187(f) which relates to challenges for cause, among which is the

challenge: "(7) having already sat upon a trial of the same issues;" which is found also in section 11472, Code of 1939, and in preceding Codes.

Prior to the commencement of the trial the defendants moved the court to instruct the clerk to withdraw from the ballot box in which the names of the members of the panel of the jury were placed, the names of those jurors, thirteen in number, who sat upon the trial of the case of S. W. Korf and Charles Cannon against the defendants in this case. Counsel in the Korf case were the same as in the case at bar, on both sides, with the exception that Mr. Wilson appeared also for the landowners in the Korf case. The first juror drawn upon the trial of this case was Harry Taylor who served as a juror upon the trial in the Korf case. He was challenged for the reason given heretofore, which challenge was overruled. Defendants exhausted their peremptory challenges and Taylor served as one of the trial jurors. The issues in the former case were not the same. Legal and fact issues were similar, but we have never ruled that sitting on a trial where the issues were similar disqualified a juror for subsequent trials of another case involving different facts and property.

A juror in an extended term of court may often be called upon to try cases of the same nature. Assuming that a person sits as a trial juror in one case involving violation of the liquor laws, we can hardly conceive this disqualifies him for subsequent trials of the same nature and perhaps for the same kind of an offense. Yet, the state of Iowa is the plaintiff in all such cases. As a matter of fact, we know that it is a common practice of jurors to try all kinds of cases and similar cases through a long term of court. This court has held contrary to defendants' contention.

Snakenberg v. Minneapolis & St. L. Ry. Co., 194 Iowa 215, 220, 188 N. W. 935, 938, was an action to recover damages for a death alleged to have been caused by the defendant through negligence in the operation of one of its trains. The accident occurred in 1914. Plaintiff's intestate with two men named Borough and Northrup were driving on a highway across a railroad track. Borough was injured and his case was tried in 1918. See Borough v. Minneapolis & St. L. Ry. Co., 184

Iowa 210, 167 N. W. 177. A juror who had sat in the Borough case was drawn as a juror to sit on the Snakenberg case, apparently without his knowledge at the start of the trial that the issues involved were alike, and the circumstances much the same. This court held that this did not vitiate the verdict. The court states:

"As to the first, we know of no rule prohibiting a juror's sitting on a case merely because he has been a juror on another case wherein the facts were the same, if he has not formed nor expressed an opinion as to the merits of the case."

See, also, State v. Sheeley, 15 Iowa 404, where section 4771 of the Revision is quoted to the effect that a challenge for cause is, serving on a trial jury which had tried another defendant for the offense charged in the indictment. The court held this applied only where the defendants had been jointly indicted for the same offense. Also, see, State v. McMahon (Iowa), 211 N. W. 409. We hold that there was no error in accepting the juror.

IV. Defendants take exception to the giving of instruction No. 12, characterizing it as erroneous. The instruction is as follows:

"You are instructed that the damages sustained by the plaintiffs in this case were sustained at the time of the taking of the right of way and station grounds, and that the plaintiffs were not under any duty or obligation to buy any other land to minimize the damages that resulted to their farm by reason of such taking by the defendant railway company; and the fact that they did after such condemnation proceedings purchase other land is not to be considered by you in determining the fair and reasonable market value of plaintiffs' farm after the condemnation and taking of the right of way and station grounds through their farm."

It appears from the evidence that after the condemnation plaintiffs purchased a 44-acre tract located on the east and west road one-half mile from the southwest corner of plaintiffs' north 80 acres. Of this about 20 acres could be cultivated. The

instruction of the court directed the jury to disregard this fact. Defendants assert that this should be considered as minimizing the damages; that the fact of the purchase tended to mitigate or reduce the damages otherwise accruing to the landowner. They allege in argument that it is the duty of one affected by condemnation proceedings to minimize the consequent damage resulting from the taking of his property. They cite the cases of Des Moines Wet Wash Laundry v. City of Des Moines, 197 Iowa 1082, 198 N. W. 486, 34 A. L. R. 1517; Kemmerer v. Iowa State Highway Comm., supra.

Defendants admit that the decision of this court in the Kemmerer case was proper, based upon sound logic, and that no one can quarrel with it, yet the holding of the case is opposed to their contention. In the Kemmerer case at pages 141 and 142 of 214 Iowa, pages 695 and 696 of 241 N. W., the court said:

"Appellee was under no legal duty to minimize his damages. * * * Appellee was under no legal obligation to consent to the removal of his improvements to some other point on the farm, nor should his refusal to do so be made a basis for denying him damages resulting from the separation of such improvements from the rest of the farm."

Defendants appear to argue that the rule should be the same as in tort cases, but in condemnation cases there is a constitutional provision that benefits cannot be considered, which is not the case as to damages in tort cases. The case of Des Moines Wet Wash Laundry v. City of Des Moines, supra, involved the condemnation of a property which plaintiff held under a written contract of lease with the owner thereof. The leasehold interest was assessed by the jury and a judgment taken therefor. We do not think that the case cited relates to or supports defendants' proposition.

██ ██ We are satisfied that the mere purchase of other land, even to take the place of land condemned, may not be considered in this litigation, and can have no bearing upon the question of plaintiffs' damage. To consider it as such might well extend the inquiry to unreasonable lengths and would be no more than speculation at the best. There are so many rea-

sons why a person might invest in real estate other than merely to take the place of condemned property, so many questions of value and use of the newly acquired property, that new issues would be created and new questions arise entirely apart from the question to be determined in the case, which is merely the difference in value before and after the taking. It would be practically impossible to use the fact of the purchase of the land in any manner which would throw light upon the question to be decided. Plaintiffs raise an objection to the question of mitigation, asserting that even if this defense were possible, it was not specially pleaded and proven, and is therefore not in issue in this case. Citing Code of 1946, section 619.8; Morse v. Century Cab Co., 230 Iowa 443, 297 N. W. 877, 134 A. L. R. 635; Moran v. Iowa State Highway Comm., 223 Iowa 936, 274 N. W. 59; Stoner v. Iowa State Highway Comm., 227 Iowa 115, 287 N. W. 269. We must hold that the objection is proper.

We have considered the propositions urged by the defendants for reversal. We are satisfied that throughout the trial of the case there was not such error as would warrant a reversal and reconsideration by the district court. It is not the duty of this court to determine the question of damages, if sustained by the evidence, in the absence of anything indicating passion and prejudice. This was for the jury to determine. On the whole we are satisfied that the cause should be affirmed and it is so ordered.—Affirmed.

All JUSTICES concur.