L & W CONSTRUCTION COMPANY, INC., appellee, v. LEO KINSER and RICHARD E. MORRIS, d/b/a Kinser and Morris Construction Company, et al., appellants.

No. 49700.

(Reported in 99 N.W.2d 276)

November 17, 1959.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellant and cross-appellees, Employers Mutual Casualty Company.

Stuart & Stuart, of Chariton, for appellee and cross-appellant.

Garrett, J.—This is an action at law by L & W Construction Company, a corporation, subcontractor, against Kinser and Morris, a partnership, principal contractor, and Employers Mutual Casualty Company, a corporation, surety on the principal contractor's bond, for money due for materials furnished Kinser and Morris by L & W Construction Company.

On August 11, 1955, Kinser and Morris entered into a contract with the Iowa State Conservation Commission to construct certain improvements in the Colyn Conservation Area in Lucas County. The casualty company signed as surety on the required statutory bond given to secure performance of the contract and payment for labor and materials furnished in performance thereof. The contractor purchased from plaintiff riprap rock amounting to $8580.60 the last of which was delivered February 20, 1956. The commission accepted the finished work on April 16, 1956. Kinser and Morris had experienced financial difficulties and claims considerably in excess of the funds remaining in the hands of the commission were filed with the commission as provided by law. Plaintiff did not file its claim to bring itself within the provisions of chapter 573 of the 1954 Code of Iowa.

Claims filed with the commission amounting to $26,581.98 were paid by the surety on the contractor's bond and the surety was partially indemnified by the receipt from the commission of the final amount held by it or $16,448.82. The contractor then gave the surety its promissory note for the difference.

The contractor admitted liability but the surety defended on the ground the claim of plaintiff had not been filed with the commission within thirty days after the completion and acceptance of the work and action had not been commenced within sixty days thereafter, as required by chapter 573 of the Code. The plaintiff conceded it had not filed its claim with the commission within thirty days after the acceptance of the work, as required by section 573.10 and that it had not commenced an action on the bond within sixty days thereafter, as required by section 573.16, but alleged that the surety was estopped from relying on such failure (1) by its wrongful statements, actions and conduct preventing plaintiff from filing its claim (2) by the representations and statements of the contractor to plaintiff to induce plaintiff not to file its claim made for and on behalf of and at the suggestion of the surety, and (3) by the wrongful actions, conduct and representations of the contractor in privity with the surety by virtue of the surety bond and the assignment by the contractor to the surety of the funds remaining in the hands of the commission, which prevented plaintiff from filing

its claim. The defendant surety denied it was estopped to rely upon the provisions of chapter 573, denied it had in any way induced plaintiff not to file its claim or to commence action and denied it was in any way bound by the conduct of the contractor, if any, which might have induced plaintiff not to file its claim or commence action.

The trial court overruled the defendant surety's motion for a directed verdict at the close of the evidence and submitted the case to the jury upon the issue whether the surety had directly or indirectly induced the plaintiff not to file its claim. The jury returned a verdict for the plaintiff for $8580.60 and judgment was entered thereon. Defendant surety's motions for judgment notwithstanding verdict and for a new trial attacking the sufficiency of the evidence to sustain the verdict on the issue of estoppel were overruled.

I. Defendant appellant assigns as error the failure of the court to sustain said motions, since, as it claims, "there was no proper evidence in the record to support the jury's finding that the defendant surety had induced plaintiff not to file its claim with the Conservation Commission so as to be estopped to deny liability on account of such failure to file" and because the "plaintiff failed to establish any claim against the * * * surety not barred by chapter 573, for failure to file within thirty days and to commence action within sixty days."

We are thus confronted with the question, was there sufficient competent evidence in the record to justify the verdict of the jury? We have held that where the evidence is in conflict and the verdict has ample support in the evidence, it is not proper for this court to re-evaluate the evidence and substitute its opinion for the determination of the jury. Schoonover v. Fleming, 239 Iowa 539, 32 N.W.2d 99, and cases cited.

The evidence and such inferences as may be drawn therefrom must be viewed in the light most favorable to the plaintiff if there is competent evidence to sustain his claim and it is not for this court to do otherwise than sustain the findings of the jury when based on competent evidence. Young v. Blue Line Storage Co., 242 Iowa 125, 44 N.W.2d 391.

"Where reasonable minds, searching for the truth, might justly differ touching the proper inference to be drawn

from proven facts, the conclusion reached by the jury will not be disturbed by this court." Carpenter v. Loetscher-Jaeger Mfg. Co., 178 Iowa 320, 332, 157 N.W. 938, 942.

We have read and reread the record and are unable to find therein any evidence, including the most favorable inferences that may be drawn therefrom, which would justify the jury in finding that the surety directly or indirectly induced the plaintiff not to file its claim or bring suit thereon within the time limited by statute.

Chapter 573 provides that contracts for the construction of public improvements shall be accompanied by a bond, with surety, conditioned for the performance of the contract. Section 573.6 requires that every principal and surety shall agree to pay to all persons, firms and corporations having contracts directly with the principal or subcontractors, all claims due for labor and materials furnished in the performance of contracts when the same are not satisfied out of the portion of the contract price which the public corporation is required to retain until the completion of the improvement, providing the claims are established as provided by law. Section 573.10 provides claims may be filed before the expiration of thirty days immediately following the completion and final acceptance of the improvement. It is undisputed that the commission paid the contract price in full soon after the expiration of thirty days from the acceptance of the improvement, that plaintiff's claim was not filed and is unpaid and that suit was not commenced within sixty days.

The court gave the jury the following instruction:

"In this connection you are instructed that by the terms of its bond the Employers Mutual Casualty Company was only required to pay the claims filed with the Conservation Commission, and since plaintiff's account was never filed with the Commission the Employers Mutual Casualty Company would not be liable for its payment, unless it in some manner induced the plaintiff to refrain from filing its claim as required by law.

"Hence, before plaintiff can recover in this action it must establish by the preponderance of the evidence that the Employers Mutual Casualty Company in some manner, either directly or indirectly, induced the plaintiff to believe that its claim

would be paid without filing the same with the Conservation Commission and to refrain from filing the same as required by law.

"However, if the plaintiff has established by the preponderance of the evidence that the Employers Mutual Casualty Company sought to prevent the plaintiff from filing its claim and authorized the defendant Morris to try and induce plaintiff not to file its claim, and Morris did by giving his check for the amount with the request that it be held and by telling plaintiff that the bonding company had stated that plaintiff had a year in which to file its claim induce plaintiff not to file its claim, you are instructed that the Employers Mutual Casualty Company would be estopped from denying liability to plaintiff, and plaintiff would be entitled to judgment for the amount of $8580.60. But if the Employers Mutual Casualty Company did not induce the plaintiff through Mr. Morris to refrain from filing its claim, then plaintiff cannot recover in this action even though you believe that Mr. Morris acting for himself, and not at the suggestion or request of the Bonding Company may have induced plaintiff not to file its claim."

The above instruction became the law of the case.

Richard E. Morris, a partner in Kinser and Morris, testified for plaintiff:

"Between April 16 and May 1, of 1956, I was called into the office of Employers Mutual Casualty Company and made several trips there. I could not tell the exact dates. I recall giving a check which was dated May 1st and I was in the office of the Company between April 16th and before I gave the check on May 1st. I was called there by Clarence Johnson (admittedly a representative of Employers Mutual Casualty Company). I was called * * * primarily on our financial situation and on the claims being filed against us as contractor and the bills on the Colyn area.

"Our financial condition was not good and I talked with Mr. Johnson about that. * * * He asked me about a bank account and I told him I did not have any. * * * Mr. Johnson had figures on the amount of the balance that was due on the contract. He knew it would be around $16,000. That is all the money that I had and I told him that. On that date I mentioned the fact

that L & W Construction Company had not been paid. That was the only one besides what was on the list I was liable for. * * * I told Mr. Johnson that the L & W account was owing and Mr. Johnson wanted to know what I was going to do about it. He already knew that L & W hadn't filed its claim. We talked about the L & W claim and I told him (Mr. Johnson) that I thought if I gave Mr. Thomas (L & W Construction Company) a check and told him to hold it in that way he would not file a claim. Mr. Johnson made no objection to my doing that. I had told him I didn't have any money except the balance on the final.

"Q. After you told Clarence Johnson your financial standing that was prior to May 1st you could come down and give Boze (Mr. Thomas) a check and ask him to hold it. Did you do that very thing? A. Yes, I did." (The check of Kinser and Morris dated May 1, 1956, for $8580.60 payable to plaintiff was then received in evidence for the purpose of establishing the amount of the claim.) "After I issued the check I had another conference with Mr. Johnson. * * * At that time he wanted me to assign the money left in the conservation end of the contract. I had to make an assignment and also list my assets and liabilities. That is what Mr. Johnson said he wanted. Q. What did you say to Mr. Johnson at that time about this check dated May 1st? A. I brought that up, and also I couldn't cover that check with the assignment being made, and also I had the feeling that it was going to release Ed Prothero's bonding company * * *. Q. Did you advise Mr. Johnson of what you told Boze Thomas about the funds that would pay his check? A. I told him the check I had out. All the money I had left was in the final of the Conservation Commission job, although at that time I was working, but I didn't have any potential to cover a check that big. Q. Did you or not tell Mr. Johnson that is what you advised Boze Thomas that is what this check would be paid from? A. That is what I said. * * * Q. What did he say to you, if anything, about an action or claim against Prothero? A. He said * * * this assignment didn't make any difference because Ed Prothero as well as the Employers Mutual was liable for one year after completion of the contract for any claims or any suits. Q. Did he make reference to his company being liable for claims

or suits? A. Yes. Q. For what period? A. For one year. * * * The only time the one year of liability was mentioned was at the time I made the assignment (May 9, 1956)." (He then qualified the last statement.) "I think I told Boze Thomas when I gave him the check that the bonding company would be liable for a year. I had to get that information from Mr. Johnson because I didn't know. * * * When I gave Mr. Thomas the check dated May 1, 1956, * * * I told him I didn't have the money to cover it but I would get it to him for him to hold until I got the finals on the job then it would be good. * * * Q. You have testified Mr. Johnson said the insurance company was going to have to pay these bills and claims, is that right? A. That's right. Q. Did he make any exception of the claim of L & W Construction Company? A. I don't remember any."

On cross-examination Morris testified:

"Mr. Johnson told me that a claimant would have a year to sue on the bond. * * * I can remember distinctly the last time because of the concern I had with Prothero's Bond, if it had gone over the 30-day period. * * * When I issued that check I hadn't made an assignment of that money."

Forrest Thomas, president of L & W Construction Company, testified:

"I had been pressing Dick pretty hard for my pay, * * * he had finished the contract by this time and I was worried about my money; * * *. He told me then he would give me a check, but he didn't have the funds in the bank to cover it, he would have in a few days, he was expecting to get in money from the State Commission from this job. * * * out of the check he would get from the Commission he would have plenty of money to make my check good. Q. Anything said at that time by Mr. Morris in regard to filing a claim? A. Yes. He told me that he understood from the office in Des Moines that we had a full year to still file a claim. * * * He asked me if I had filed a claim, and I told him no, and he seemed to be glad. He said if I had it would take more time because my claim had to go to Des Moines and hold up the pay so he couldn't pay any of them, and as I say I was getting worried about it. Q. In not filing your claim state whether or not you relied upon what Mr. Morris told you about the filing of claims? A. Evidently I did,

because I knew I only had a week longer to file a claim. I didn't do it because he promised to pay me. He promised to get that check in the bank so my check would be good. Q. State whether or not in not filing your claim you relied on his statement to the effect the bonding company was liable for a year? A. That was part of it. That was part of the agreement with me, they were liable for a year."

Clarence Johnson testified:

"Moneywise, I suppose my Company stood to gain in the event a claim was not filed by L & W. That is the way it worked out. A. We were told it wasn't going to be filed. Q. Yes, and you hoped it wouldn't be. A. I can't say I hoped that, George. I mean everybody has a right to file a claim. Q. I know that. Yes. But you also knew that if it was filed you would have it to pay. A. That is the reason I asked Mr. Morris when he was first up there what could be done about that bill. * * * I can't see where he would have anything to gain one way or the other."

If the verdict is to stand it must find support in the testimony which we have set out and the proper inferences to be drawn therefrom.

It thus appears clearly that the plaintiff would have been paid if it had filed its claim within the thirty-day period.

The question before us is, did the Employers Mutual Casualty Company authorize or procure the statements and acts of Morris which induced plaintiff not to file its claim? There was never any direct contact between plaintiff and the surety and there is no direct evidence that the surety authorized Morris to represent it or act for it in any way or manner.

When Mr. Johnson, representing the corporate surety, discussed the account owing by Kinser and Morris to plaintiff and Morris was asked what he was going to do about it he told Johnson he thought if he gave Mr. Thomas (L & W Construction Company) a check "and told him to hold it in that way he would not file a claim." Morris testified, "Mr. Johnson made no objection to my doing that." It seems obvious Morris would not have made that statement if Johnson had asked him to get plaintiff not to file its claim. It would appear to have been Morris' proposition, rather than his own, to which Johnson made no objection.

It is difficult to understand why Morris would wish his unpaid subcontractor not to file its claim, but there is no sufficient evidence to sustain even an inference that the surety did anything more than ask Morris what he was going to do about that account. Such inquiry would be a most natural one. It is true Morris explained to Johnson that any check he gave the plaintiff would have to be paid out of the balance of the contract price held by the Commission. It would seem Johnson should then have told Morris the surety would demand an assignment to it of that balance and that there would be no funds out of which the check to L & W Construction Company could be paid. Whether Morris would then have given the check and whether plaintiff would then have filed its claim in time no one can tell.

The court's instructions, which became the law of the case, said in part, "But if the Employers Mutual Casualty Company did not induce the plaintiff through Mr. Morris to refrain from filing its claim, then plaintiff cannot recover in this action even though you believe that Mr. Morris acting for himself, and not at the suggestion or request of the Bonding Company may have induced plaintiff not to file its claim."

We are of the opinion the proven facts in this case, and the inferences which may fairly be deduced therefrom, were not sufficient to justify the jury in finding that the Employers Mutual Casualty Company "sought to prevent the plaintiff from filing its claim and authorized the defendant Morris to try and induce plaintiff not to file its claim." In other words, there was insufficient evidence to sustain the finding of the jury that the defendant surety was estopped from raising the question of plaintiff's failure to file its claim with the Conservation Commission.

■ The doctrine of equitable estoppel is applicable to statutes of limitations. Holman v. Omaha & C. B. Ry. & Bridge Co., 117 Iowa 268, 90 N.W. 833, 62 L. R. A. 395, 94 Am. St. Rep. 293; In re Estate of Carpenter, 210 Iowa 553, 231 N.W. 376; Swift v. Petersen, 240 Iowa 715, 37 N.W.2d 258.

■ "A statute cannot stand in the way of waiver or equitable estoppel when the facts demand their application in the interest of justice and right." Kallock v. Elward, 118 Maine 346, 348, 108 A. 256, 258, 8 A. L. R. 750, 752.

■ "A defendant may be estopped by his agreement, representations, or conduct from asserting the bar of the statute of limitations. * * * However, before the doctrine of estoppel to plead limitations may be successfully invoked on the basis of fraud, it is essential to show existence of the essential elements of such an estoppel, * * * and in this connection it has been held that plaintiff is under a duty to exercise reasonable care and diligence." 53 C. J. S., Limitations of Actions, section 25, pages 962, 965.

There was some rather vague testimony to the effect that Mr. Johnson told Morris that plaintiff had a year in which to file its claim. Morris testified, "The only time the one year of liability was mentioned was at the time I made the assignment." As shown, the assignment was made after plaintiff received the worthless check. He later said *"I think* I told Boze Thomas when I gave him the check that the bonding company would be liable for a year. I had to get that information from Mr. Johnson because I didn't know." This testimony shows some uncertainty on the part of the witness and in any event the record lacks evidence that the surety authorized or directed Morris to make any representations in its behalf.

Plaintiff stood on an equal footing with defendants so far as opportunity to know the law is concerned and it seems clear that its officers knew of the thirty- and sixty-day limitation periods. Mr. Thomas, testifying for plaintiff, was asked:

"Q. Why didn't you file a claim? A. Well, I didn't file the claim because if I had of that would have held up his pay that much longer. If I filed a claim it had to go through Des Moines he wouldn't have got his final estimate until after my claim was passed on, so I would have been out my money longer. Q. In not filing your claim state whether or not you relied upon what Mr. Morris told you about the filing of claims? A. Evidently I did, because I knew I only had a week longer to file a claim. I had another week or two weeks—I had two weeks to .file a claim. I didn't do it because he promised to pay me. He promised to get that check in the bank so my check would be good."

It thus appears plaintiff knew the statutory limitation and his real reason for not filing was that he relied upon Morris' promise to pay him. Having testified as above, he continued:

"Q. State whether or not in not filing your claim you relied on his statement to the effect the bonding company was liable for a year? A. That was part of it. That was part of the agreement with me, they were liable for a year."

It takes more than that to prove an agreement.

The law requiring the bond was enacted to protect subcontractors and others. Its benefits were available to plaintiff. It could have filed its claim but chose to rely upon Morris' promise. There is no evidence the surety made plaintiff any promise or representations and there is no evidence which would justify even an inference that the surety authorized Mr. Morris to make any promises or representations in its behalf. The plaintiff has failed to prove any conduct on the part of the surety which would justify the jury in finding that the surety is estopped to claim the benefit of the statutory limitations.

II. Plaintiff requested an instruction that "An assignee who takes with notice of the equities in favor of third persons and against its assignor is bound thereby and said assignee acquires no greater rights than possessed by said assignor and stands in the shoes of the latter. In this case the undisputed evidence shows that Employers Mutual Casualty Company was assigned all monies due or to become due Kinser and Morris under the contract with the State Conservation Commission. If you have previously found an equitable estoppel against Kinser and Morris by the conduct of Richard E. Morris and if you now find that Employers Mutual Casualty Company had notice of the facts constituting the estoppel or should have had notice thereof at the time of the assignment, your verdict shall be for the plaintiff."

The court refused to give the instruction, and appellee appeals from this ruling. The ruling was correct. The balance held by the commission was assigned by Kinser and Morris to the surety. The only way plaintiff could have gotten any part of that fund was to file its claim. No claim was filed. Other parties filed claims in an amount far exceeding the remaining balance. The surety paid them and would therefore have a just claim against the fund. Plaintiff had a worthless check but not an assignment of any part of the fund. The promise of Morris that he would place the money in the bank to make the check

good gave the plaintiff no legal rights against the surety which held an assignment of the balance held by the commission. We think the cases cited by plaintiff cross-appellant on this issue are not factually in point.—Reversed on defendant's appeal and affirmed on plaintiff's cross-appeal.

All JUSTICES concur.